[No. 62847-5.   En Banc.]
Argued March 5, 1996.     Decided May 16, 1996.

THE STATE OF WASHINGTON, *Respondent*, v. DONALD
J. ROSS, *Petitioner*.

*Donald J. Ross*, pro se; and *Ende, Subin & Philip*, by *Douglas J. Ende*, for petitioner.

*Gary A. Riesen, Prosecuting Attorney*, and *Susan E. Hinkle, Deputy*, for respondent.

DOLLIVER, J. — Defendant Donald J. Ross has moved to withdraw his guilty plea as involuntary on the basis he was never informed a mandatory 12-month community placement would follow his prison sentence. We hold mandatory community placement constitutes a direct consequence of a guilty plea and failure to so inform a defendant renders that plea invalid. The trial court erred by denying Defendant's motion to withdraw his guilty plea.

The Legislature has ordered that defendants convicted of certain classes of serious offenses serve mandatory community placement, one year for crimes committed between July 1, 1988, and July 1, 1990 (*see* RCW 9.94A.120(8)(a)), in addition to their prison terms:

> "Community placement" means a one-year period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned early release. Community placement may consist of entirely community custody, entirely postrelease supervision, or a combination of the two.

Former RCW 9.94A.030(4).

> "Community custody" means that portion of an inmate's sentence of confinement in lieu of earned early release time served in the community subject to controls placed on the inmate's movement and activities by the department of corrections.

Former RCW 9.94A.030(3).

> "Postrelease supervision" is that portion of an offender's community placement that is not community custody.

Former RCW 9.94A.030(21); *see State v. Skillman*, 60 Wn. App. 837, 840, 809 P.2d 756, *review denied*, 114 Wn.2d 1009 (1991). A defendant under community placement is subject to standard conditions, unless waived by the court:

> (i) The offender shall report to and be available for contact with the assigned community corrections officer as directed;

> (ii) The offender shall work at department of corrections-approved education, employment, and/or community service;

> (iii) The offender shall not consume controlled substances except pursuant to lawfully issued prescriptions;

> (iv) An offender in community custody shall not unlawfully possess controlled substances; and

> (v) The offender shall pay supervision fees as determined by the department of corrections.

Former RCW 9.94A.120(8)(b). In addition, the trial court may impose special conditions:

(i) The offender shall remain within, or outside of, a specified geographical boundary;

(ii) The offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals;

(iii) The offender shall participate in crime-related treatment or counseling services;

(iv) The offender shall not consume alcohol;

(v) The residence location and living arrangements of a sex offender shall be subject to the prior approval of the department of corrections; or

(vi) The offender shall comply with any crime-related prohibitions.

Former RCW 9.94A.120(8)(c).

Ordinarily, a defendant will learn of the mandatory community placement prior to pleading guilty in the plea form required by CrR 4.2(g):

In addition to confinement, the judge will sentence me to community placement for at least 1 year. During the period of community placement, I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities.

CrR 4.2(g)(6)(j).

This case stems from the use of an outdated plea form lacking that community placement warning. On November 6, 1991, Defendant pleaded guilty to three counts of second degree child rape committed against his former stepdaughter prior to July 1, 1990. Those offenses carried a maximum sentence of 10 years and a $20,000.00 fine, a minimum sentence for Defendant's criminal history of 67 months, and a mandatory 12-month community placement.

The parties do not dispute Defendant did not receive an explicit warning of his mandatory one-year community

placement term prior to entering his plea. Unlike the appropriate CrR 4.2(g) plea form, Defendant was presented with an outdated form omitting the community placement information. Nor did the trial court address this implication during oral colloquy. In his plea form and in open court, Defendant confirmed his knowledge of the maximum and minimum prison terms and the State's recommended sentence of an 89-month prison term. Defendant also expressed his understanding the State's sentencing recommendation did not bind the sentencing court, and he could not appeal his ultimate sentence unless the court did not adhere to the sentencing range.

Defendant received the maximum 89-month sentence within his sentencing range plus the mandatory one-year community placement. In addition to the standard community placement conditions, the court adopted special conditions recommended by the presentence investigator: no contact with the victim; no contact with females under 16 years old; Department of Corrections' approval of residence location and living arrangements; and urinalysis and polygraph at the will of his community corrections officer.

Defendant subsequently moved the trial court to withdraw his guilty plea as involuntary. The trial court denied withdrawal, concluding Defendant's plea form substantially complied with CrR 4.2(g), and the omission of the mandatory 12-month community placement represented merely a collateral consequence of his plea insufficient for withdrawal. The Court of Appeals affirmed. *State v. Ross*, causes 12217-4-III, 14020-2-III, slip op. at 11. (Wash. Ct. App. Apr. 11, 1995). The Supreme Court granted discretionary review. We now reverse.

■ A court may permit withdrawal of a guilty plea in accordance with CrR 4.2(f):

> The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice.

The defendant bears the burden of proving manifest

injustice, defined as "obvious, directly observable, overt, not obscure.'" *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)); *State v. Moore*, 75 Wn App. 166, 171-72, 876 P.2d 959 (1994).

▪ An involuntary plea produces a manifest injustice to permit withdrawal. *Saas*, 118 Wn.2d at 42; *Moore*, 75 Wn. App. at 172. Due process requires an affirmative showing that a defendant entered a guilty plea intelligently and voluntarily. *State v. Barton*, 93 Wn.2d 301, 304, 609 P.2d 1353 (1980) (citing *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)). Beyond this constitutional minimum, CrR 4.2 details further safeguards on the voluntariness of pleas:

> The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

CrR 4.2(d); *see Barton*, 93 Wn.2d at 304.

▪ Here the question concerns whether Defendant understood the consequences of his plea. A defendant need not be informed of all possible consequences of a plea but rather only direct consequences. *Barton*, 93 Wn.2d at 305. The court has distinguished direct from collateral consequences by "whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment'." *Barton*, 93 Wn.2d at 305 (quoting *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005 (1973)).

Mandatory community placement produces a definite, immediate and automatic effect on a defendant's range of punishment. We reject the State's contention that the possibility of an overlap between a community placement term and any community custody imposed in lieu of earned early release renders community placement indefi-

nite. RCW 9.94A.030(5). That community custody in lieu of earned early release reduces a defendant's total confinement time but is uncertain at sentencing is irrelevant to the certainty of community placement. A defendant will definitely serve a full 12 months of mandatory community placement. Only the composition of community placement is uncertain at sentencing. *See* RCW 9.94A.120(8)(b).

We also refute the State's argument that community placement is not immediate because the term begins upon the completion of confinement or transfer to community custody in lieu of earned early release credit instead of immediately upon sentencing. *See* RCW 9.94A.150(1), (2). Immediacy does not necessitate the community placement itself occur immediately upon sentencing. Rather, as this court has repeatedly articulated, it is the "*effect* on the range of defendant's punishment" that must be immediate. *State v. Ward*, 123 Wn.2d 488, 512, 869 P.2d 1062 (1994) (emphasis added) (quoting *Barton*, 93 Wn.2d at 305). In contrast are sentencing conditions where any effect on punishment flows not from the guilty plea itself but from additional proceedings and thus cannot qualify as immediate. *State v. Olivas*, 122 Wn.2d 73, 96, 856 P.2d 1076 (1993) (mandatory DNA testing); *Barton*, 93 Wn.2d at 305 (discretionary habitual criminal proceeding); *In re Ness*, 70 Wn. App. 817, 823, 855 P.2d 1191 (1993) (federal sentence restricting possession of firearms), *review denied*, 123 Wn.2d 1009 (1994); *In re Peters*, 50 Wn. App. 702, 704-05, 750 P.2d 643 (1988) (deportation); *State v. Malik*, 37 Wn. App. 414, 415-16, 680 P.2d 770, *review denied*, 102 Wn.2d 1023 (1984) (deportation). Community placement, on the other hand, affects the punishment flowing immediately from the guilty plea.

Community placement imposes a punishment as well. To identify a punishment in the context of a direct consequence of a guilty plea, we examine whether the effect enhances the defendant's sentence or alters the standard of punishment. *Ward*, 123 Wn.2d at 513; *Barton*, 93 Wn.2d at 306. The State mischaracterizes the purposes of com-

munity placement as merely rehabilitative and regulatory. *See Ward*, 123 Wn.2d at 513; *State v. Perkins*, 108 Wn.2d 212, 218, 737 P.2d 250 (1987); *In re Estavillo*, 69 Wn. App. 401, 404, 848 P.2d 1335 (deciding sex offender registration serves regulatory rather than punitive function), *review denied*, 122 Wn.2d 1003 (1993). Community placement primarily furthers the punitive purposes of deterrence and protection. *See In re Davis*, 67 Wn. App. 1, 9 n.5, 834 P.2d 92 (1992) (describing community placement as "part of an inmate's punishment" requiring explicit statutory authorization); *State v. Miles*, 66 Wn. App. 365, 368, 832 P.2d 500 (noting enhanced sentences for crimes committed while on community placement further purposes of protection and deterrence), *review denied*, 120 Wn.2d 1012 (1992).

Nor do we accept the State's description of community placement as a "reward for rehabilitation" analogous to probation or parole rather than a sentence enhancement. The State's theory ignores the fundamental distinction between community placement and the related effects of probation and parole: Community placement occurs in addition to the period of confinement, while probation and parole occur in lieu of confinement. *See Parry v. Rosemeyer*, 64 F.3d 110, 116-17 (3d Cir. 1995), *cert. denied*, 116 S. Ct. 734 (1996). On this basis federal courts have described mandatory special parole, a term similar to community placement imposed in addition to and following a prison term, as a direct consequence as opposed to the collateral consequence of probation or presentencing parole. *Carter v. McCarthy*, 806 F.2d 1373, 1376 (9th Cir. 1986), *cert. denied*, 484 U.S. 870 (1987); *United States v. Finkbeiner*, 551 F.2d 180, 184 (7th Cir. 1977); *United States v. Richardson*, 483 F.2d 516, 518 (8th Cir. 1973)

In effect, community placement imposes significant restrictions on a defendant's constitutional freedoms. *In re Caudle*, 71 Wn. App. 679, 683, 863 P.2d 570 (1993) (Sweeney, J., concurring); *State v. Llamas-Villa*, 67 Wn. App. 448, 455, 836 P.2d 239 (1992). We echo the assessment by Judge Sweeney of the Court of Appeals:

A defendant is no less restricted when he is under community placement, particularly community custody, as when incarcerated. Defendants who commit crimes while on community placement are subject to enhanced penalties. *State v. Miles*, 66 Wn. App. 365, 832 P.2d 500, *review denied*, 120 Wn.2d 1012 (1992). A defendant's constitutional rights during community placement are subject to the infringements authorized by the SRA [Sentencing Reform Act of 1981], RCW 9.94A.

*In re Caudle*, 71 Wn. App. at 683 (Sweeney, J., concurring); *see State v. Llamas-Villa*, 67 Wn. App. at 455.

■ Despite our categorization of mandatory community placement as a direct consequence, the State asserts Defendant received adequate sentencing information to uphold his plea as voluntary and intelligent. The State bears the burden of proving the validity of a guilty plea. *Wood v. Morris*, 87 Wn.2d 501, 507, 554 P.2d 1032 (1976). Knowledge of the direct consequences of a guilty plea may be satisfied from the record of the plea hearing or clear and convincing extrinsic evidence. *Wood*, 87 Wn.2d at 511.

There is no dispute the record lacks any evidence Defendant was advised of the specific consequence of community placement. The State describes Defendant's plea as voluntary because he knew of the maximum sentence of 10 years for his crime and the court's discretion to reject the plea agreement's sentencing recommendation. As the State points out, Defendant's actual total sentence of 101 months, 89 months in prison plus one year in community placement, fell short of that possible 120-month statutory maximum.

Defendant's knowledge of his maximum prison sentence was insufficient to assure his understanding of the direct consequence of community placement. The plea to which Defendant agreed was not the plea the State now seeks to enforce. Defendant signed a plea agreement believing the State was recommending a total sentence of 89 months, not 101 months. More significantly, mandatory community placement enhanced Defendant's minimum sentence and

altered the standard of punishment applicable. Although Defendant knew the State's recommendation did not bind the trial court, he claims he would not have agreed to such a plea. Without evidence of an explicit explanation of mandatory community placement, we must conclude Defendant was unable to enter an intelligent, voluntary plea. As provided in CrR 4.2(f), Defendant may withdraw his guilty plea to correct this manifest injustice. *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991).

DURHAM, C.J., and SMITH, GUY, JOHNSON, and TALMADGE, JJ., concur.

SANDERS, J., (concurring) — I concur in the result that Defendant Ross be permitted to withdraw his guilty plea. While this is correct, it is so because Defendant Ross chose withdrawal, rather than specific performance, as his remedy. Here, the State proposed specific performance by striking the community placement portion of Defendant's sentence but the Defendant elected withdrawal.

It is well settled that withdrawal of the guilty plea or specific performance are alternative remedies available to defendant at his choosing when the plea agreement is breached or is involuntary. *See State v. Schaupp*, 111 Wn.2d 34, 41, 757 P.2d 970 (1988) ("Two remedies are available for breach of a plea bargain—withdrawal of the plea and specific performance"), *State v. Miller*, 110 Wn.2d 528, 535, 756 P.2d 122 (1988) ("We hold now that the defendant's choice of remedy controls, unless there are compelling reasons not to allow that remedy"), and *In re James*, 96 Wn.2d 847, 849, 640 P.2d 18 (1982).

MADSEN and ALEXANDER, JJ., concur with SANDERS, J.