[Nos. 14954-4-III; 15172-7-III.   Division Three.   October 7, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v.
LEONARDO ACEVADO OSEGUERA, *Appellant.*
*In the Matter of the Personal Restraint of* LEONARDO
ACEVADO OSEGUERA, *Petitioner.*

*Thomas E. Weaver, Jr.,* of *Barker & Howard,* for appellant/petitioner.

*Gary A. Riesen, Prosecuting Attorney,* and *Roy S. Fore, Deputy,* for respondent.

SCHULTHEIS, J. — Two months after he pleaded guilty to possession of cocaine with intent to deliver, Leonardo Acevado Oseguera moved to withdraw his plea on the basis of ineffective assistance of counsel. The trial court denied the motion. On appeal, Mr. Oseguera contends he was not informed in writing of the community placement conditions before he pleaded guilty. His personal restraint petition, consolidated with this case for review, renews his claim of ineffective assistance and further addresses the legality of the search and seizure that led to his arrest. We find that Mr. Oseguera was not adequately informed of the mandatory community placement and allow him to withdraw his guilty plea.

### FACTS AND PROCEDURE BELOW

In January 1995, an officer saw Mr. Oseguera driving and — due to past dealings with him — suspected he was driving without a valid license. A call to dispatch revealed that Mr. Oseguera's license had been revoked. After stopping him, the officer learned from dispatch that Mr. Oseguera had an outstanding felony warrant and arrested him on the warrant. During the search incident to arrest, the officer found a pager, a large quantity of cash and four small bags of white powder, later determined to be cocaine.

Mr. Oseguera was charged by information with one count of unlawful possession of cocaine with intent to deliver, RCW 69.50.401. In March 1995, he pleaded guilty to this charge and the State recommended dismissal of unrelated charges of forgery, obstructing a police officer and driving with a suspended license. The "Statement of Defendant on Plea of Guilty" prepared by Mr. Oseguera's counsel did not mention that one consequence of conviction was community placement.

During the hearing on the plea, the State requested a sentence within the standard range. The court asked Mr. Oseguera if he understood that the court is not bound by the prosecutor's recommendation. He answered that he did. The court then asked the following: "[D]o you understand that when you get out of prison you would be supervised by the Department of Corrections if you remain in the country, and you would have to do what the Department of Corrections tells you[?]" Mr. Oseguera answered, "Yes. He came to talk to me."[1] The court accepted the guilty plea and set a date for sentencing.

Twice before and once after the guilty plea, Mr. Oseguera sent the court written requests for a change of his court-appointed counsel.[2] The clearest basis for his request was that he felt his counsel was not fair with him. In the last request, Mr. Oseguera stated he wanted to renounce his guilty plea. He claimed he was "overwhelmed" at the time of the plea and only signed because his counsel told him "he didn't feel like he had enough experience to be of any real help to [Mr. Oseguera] in this case." At the April 1995 sentencing hearing, the court addressed Mr. Oseguera's requests for new counsel and withdrawal of his plea. Defense counsel denied telling Mr. Oseguera he was too inexperienced to handle the case. The court denied the motion for new counsel but continued the sentencing and the motion to withdraw the plea, ordering further inquiry into Mr. Oseguera's reasons for withdrawal.

At the second sentencing hearing two weeks later, the court denied Mr. Oseguera's motion to withdraw the guilty plea. On the basis of the earlier court's questions to the defendant, the sentencing court found that Mr. Oseguera's plea "was not only fully informed as to the charges and the penalties but also was freely and voluntarily made

---

[1]The record does not reveal who actually came to talk to Mr. Oseguera.

[2]Mr. Oseguera's first request for new counsel was dated January 24, 1995, the date he filed — through counsel — his notice of appearance and plea of not guilty. Trial counsel had represented Mr. Oseguera on at least one prior occasion.

. . . ." The court sentenced him to 87 months, the lowest end of the standard range.[3] This appeal followed, consolidated with Mr. Oseguera's personal restraint petition.

## VOLUNTARINESS OF THE GUILTY PLEA

The mandatory plea form provided in CrR 4.2(g) requires a *written* warning that one of the consequences of the guilty plea may be at least a year of community placement following detention. CrR 4.2(g). By statute, felony drug offenders must serve one year of community placement. RCW 9.94A.120. Mr. Oseguera's plea form did not contain a provision warning him that he must submit to community placement after serving his sentence. He claims for the first time on appeal that the failure to explicitly warn him in writing of this consequence renders his plea involuntary.

A court must allow a defendant to withdraw a guilty plea " 'whenever it appears that the withdrawal is necessary to correct a manifest injustice.' " CrR 4.2(f), *quoted in State v. Ross*, 129 Wn.2d 279, 283, 916 P.2d 405 (1996). It is the defendant's burden to prove manifest injustice, defined as " 'obvious, directly observable, overt, not obscure.' " *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974); *quoted in Ross*, 129 Wn.2d at 284. Washington courts have recognized four nonexclusive instances of manifest injustice: (1) an involuntary plea; (2) a plea obtained due to ineffective assistance of counsel; (3) a plea not authorized or ratified by the defendant; and (4) the prosecution's failure to keep a plea agreement. *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991); *State v. Zumwalt*, 79 Wn. App. 124, 128, 901 P.2d 319 (1995).

On direct appeal, Mr. Oseguera argues that the involuntariness of his plea requires its withdrawal. A plea

---

[3]RCW 9.94A.310, .320, .360. Mr. Oseguera's offender score was fixed at 8, including one point added because he committed the present offense while he was under community placement. RCW 9.94A.360(18). The offender score is not contested on appeal.

is only voluntary if it is made with knowledge of all direct consequences of the plea. *Ross*, 129 Wn.2d at 284. Mandatory community placement is a definite and automatic consequence of a guilty plea and must be communicated to the defendant. *Id.* at 284-86. Mr. Oseguera contends the State's failure to warn him of this consequence on the pleading form prevented him from entering an intelligent and voluntary plea. The State counters that this issue was not raised below and may not be raised now on appeal.

Generally, appellate courts will not consider an issue raised for the first time on appeal. RAP 2.5(a); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). One exception to the general rule allows consideration of manifest errors affecting constitutional rights. RAP 2.5(a)(3); *McFarland*, 127 Wn.2d at 333. An intelligent and voluntary plea is guaranteed by due process. *Ross*, 129 Wn.2d at 284 (citing CrR 4.2(d)). Accordingly, Mr. Oseguera's contention that his plea was involuntary is of constitutional magnitude. Because the error, if proven, was reasonably likely to have affected Mr. Oseguera's decision to plead guilty, we find it manifest and accept review. *McFarland*, 127 Wn.2d at 333-34; *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

We begin by clarifying the scope of our review. Contrary to Mr. Oseguera's argument, the inquiry is not limited to the face of the pleading form. *Ross* directs us to examine the record and all clear and convincing extrinsic evidence to determine whether the defendant had actual knowledge of the mandatory community placement. 129 Wn.2d at 287.

During the hearing on the plea, the trial court asked Mr. Oseguera if he understood that the Department of Corrections would supervise him after he got out of prison and that he would have to do what the Department tells him to do. Mr. Oseguera's response, that he understood and that someone had come to talk to him, raises an inference that he was aware of postdetention supervision. What is needed, however, is an explicit understanding of

community placement's consequences. *Ross*, 129 Wn.2d at 288. These consequences include significant additional restrictions on a defendant's constitutional freedoms. *Id.* at 286-87. Although Mr. Oseguera was on community placement for a prior drug conviction at the time of the current offense, it is far from clear that he knew community placement was mandatory for a guilty plea to drug charges. All in all, we do not find clear and convincing evidence that Mr. Oseguera explicitly understood that one consequence of his guilty plea was mandatory community placement for one year. Without this understanding, his plea was involuntary and may be withdrawn pursuant to CrR 4.2(f). *Ross*, 129 Wn.2d at 288.

In light of our holding, we need not address the issue of ineffective assistance of counsel raised in Mr. Oseguera's personal restraint petition.

Reversed and remanded for trial and petition denied.

THOMPSON, J., concurs.

SWEENEY, C.J. (dissenting) — Our review of an error of claimed constitutional magnitude is conditioned upon a showing of actual prejudice. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). I do not believe that Leonardo Acevado Oseguera has affirmatively demonstrated actual prejudice. And I would therefore conclude that he has not presented a manifest error reviewable under RAP 2.5(a)(3).[4] *McFarland*, 127 Wn.2d at 334.

Neither this record nor Mr. Oseguera's argument shows any likelihood that he would have rejected the plea agreement had community placement been listed as a consequence of his plea. The record here demonstrates, for me, the contrary. He was already on community placement

---

[4]RAP 2.5(a) provides in part:

"The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right."

for a previous drug possession conviction at the time of this offense. During the plea hearing, the court asked Mr. Oseguera: "[D]o you understand that when you get out of prison you would be supervised by the Department of Corrections if you remain in the country, and you would have to do what the Department of Corrections tells you[?]" Mr. Oseguera responded: "Yes. He came to talk to me." The court then accepted the guilty plea and set a date for sentencing. This convinces me that Mr. Oseguera was aware that community placement was a consequence of his conviction. And as a necessary corollary, he has not met his burden of showing that he would not likely have pleaded guilty if he had been warned of the mandatory community placement.

Moreover, it is unlikely that the community placement mandated by former RCW 9.94A.120(8)(a) (now RCW 9.94A.120(9)(a)) for a drug felony offense would even apply to Mr. Oseguera. He was in this country illegally when he committed the crime and will be deported as soon as he is released from prison. Again, he has not demonstrated the actual prejudice necessary to raise a constitutional issue for the first time on appeal. RAP 2.5(a)(3); *McFarland*, 127 Wn.2d at 332-33.

I would affirm the trial court.

Review granted at 134 Wn.2d 1028 (1998).