[No. 26137-5-II.   Division Two.   June 7, 2002.]

THE STATE OF WASHINGTON, *Appellant*, v. ERNESTO McDERMOND, *Respondent*.

839 P.2d 890 (1992) (no heightened scrutiny where physical liberty alone is implicated).

*Gerald A. Horne, Prosecuting Attorney,* and *Michael L. Sommerfeld, Deputy,* for appellant.

*Linda J. King,* for respondent (appointed counsel for appeal).

MORGAN, J. — The State appeals an order vacating Ernesto Jimmy McDermond's guilty pleas. We reverse and remand for further proceedings.

On May 12, 1999, the State charged McDermond with two counts of first degree possession of stolen property and one count of second degree possession of stolen property. On or before March 29, 2000, the State agreed to reduce the charges to three counts of second degree possession of stolen property, and to recommend a standard-range sentence of four months. McDermond agreed to plead guilty to the reduced charges. At that time, both parties thought that McDermond's offender score was 5 and his standard range 4-12 months.

On March 29, 2000, McDermond pleaded guilty. The court scheduled sentencing for a later date.

Before the date on which sentencing was to occur, the parties realized that they had miscalculated McDermond's offender score and standard range. They now agreed that his offender score was 4 and his standard range 3-8 months.

In April 2000, McDermond moved to withdraw his pleas. At the ensuing hearing, the prosecutor and defense counsel noted they had made "a mutual mistake as to the point score."[1] McDermond argued that his decision to plead guilty had been "affected by erroneous information,"[2] and that his pleas had not been "voluntarily made."[3] The State argued that a defendant could not set aside a guilty plea just because he or she thought the standard range was *higher* than it actually was, even though a defendant could set aside a guilty plea because he or she thought the standard range was *lower* than it actually was. The State also argued that a plea could not be set aside without finding "manifest injustice."[4]

In May 2000, the trial court orally granted McDermond's motion. It did not, however, find a "manifest injustice." It stated:

> I'm going to grant the motion. You know, I struggle with finding a manifest injustice here, but I also feel that if the consequences are different than you thought they were going to be when you plead guilty, you ought to be allowed to withdraw your plea.[5]

In June 2000, each party presented proposed findings and conclusions, but the court refused to sign either party's proposal. The court commented:

---

[1] 1 Report of Proceedings (May 5, 2000) at 3.

[2] *Id.* at 6.

[3] *Id* at 4.

[4] *Id.* at 5.

[5] *Id.* at 6.

The facts are the defendant was misinformed as to the offender score, and he seeks to withdraw his guilty plea. The cases say that's all it takes.[6]

Again then, the court did not find a "manifest injustice."

## I

The State now appeals. Preliminarily, it claims that "[t]he trial court erred when it permitted defendant to withdraw his guilty plea without finding that a manifest injustice had occurred."[7] We disagree.

■ The leading case is *State v. Taylor.*[8] It notes that before the 1973 adoption of CrR 4.2, RCW 10.40.175 gave the trial court broad discretion on whether to allow withdrawal. It then goes on to state:

> The comprehensive protective requirements of CrR 4.2(d), (e) and (g) present a striking contrast to the less strict procedures formerly associated with RCW 10.40.175 and its connected cases. Greater safeguards have been thrown around a defendant at the critical time of accepting his plea of guilty. Every effort has been made to ascertain that the plea of guilty is made voluntarily, with understanding and with reasonable knowledge of the important consequences. That being the case, trial courts should exercise greater caution in setting aside a guilty plea *once the required safeguards have been employed.*
>
> Under the federal rules, the "manifest injustice" requirement has been recognized as a "demanding standard." The federal courts have found the demanding standard met where it is established that a defendant has failed to understand the consequences of his plea; or, where a defendant was denied effective assistance of counsel; or, where the plea was induced by threats or promises. . . . The [Washington State Criminal Rules] task force, in its comments, has suggested four indicia of "manifest injustice." They are: "(1) denial of effective counsel, (2) plea . . . not ratified by the defendant or one authorized [by

---

[6] 2 Report of Proceedings (June 21, 2000) at 6.

[7] Br. of Appellant at 1.

[8] 83 Wn.2d 594, 521 P.2d 669 (1974).

him] to do so, (3) plea was involuntary, (4) plea agreement was not kept by the prosecution." While we agree that any one of the above-listed indicia would independently establish "manifest injustice" and would require a trial court to allow a defendant to withdraw his plea, none is present in this case.

The American Bar Association standards and the Criminal Rules Task Force proposed standards do not suggest that the list of indicia is exclusive and we do not so hold. If, however, facts presented to the court do not fall within one of the listed categories, . . . we hold that there must at least be some showing that a manifest (*i.e.*, obvious, directly observable, overt or not obscure) injustice will occur if the defendant is not permitted to withdraw his plea.[9]

Together with later cases,[10] *Taylor* contemplates two inquiries. (1) Was the plea valid when initially entered? (2) Even if it was, should it now be set aside? If the plea was not valid when entered, the trial court must set it aside regardless of "manifest injustice." If the plea was valid when entered, the trial court may set it aside only upon finding "manifest injustice." The first inquiry is dispositive here, so the trial court was not required to find "manifest injustice."

## II

As just indicated, the dispositive inquiry is whether McDermond's pleas were valid when initially entered. If so, they should be upheld. If not, they should be vacated.

■ A defendant's decision to plead guilty must be knowing, voluntary, and intelligent.[11] To be voluntary, it must be

---

[9] 83 Wn.2d at 597-98 (emphasis added) (footnote and citations omitted).

[10] *See, e.g., State v. Oseguera Acevedo*, 137 Wn.2d 179, 193, 970 P.2d 299 (1999) (" '[t]he State bears the burden of proving the validity of a guilty plea' . . . . A defendant, in contrast, bears the burden of proving a 'manifest injustice' . . . .") (quoting *State v. Ross*, 129 Wn.2d 279, 287, 916 P.2d 405 (1996) and *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991)).

[11] *Henderson v. Morgan*, 426 U.S. 637, 644-45, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976); *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418 (1969); *Ross*, 129 Wn.2d at 284; *In re Pers. Restraint of Barr*, 102 Wn.2d 265, 269, 684 P.2d 712 (1984); *Wood v. Morris*, 87 Wn.2d 501, 507, 554 P.2d 1032 (1976);

made without coercion,[12] a matter not contested here. To be knowing and intelligent, it must at least be made with a correct understanding of the charge and of the consequences of pleading guilty.[13]

Since the 1980 case of *State v. Barton*,[14] Washington courts have dichotomized the consequences of pleading guilty into those that are "direct" and those that are "collateral."[15] A "direct" consequence is one that has a " 'definite, immediate and largely automatic effect on the range of defendant's sentence.' "[16] A "collateral" consequence is one that does not "alter the standard of punishment"[17] and that involves " 'ancillary or consequential results which are peculiar to the individual.' "[18] "Direct" consequences include (1) the statutory maximum sentence,[19] (2) the standard sentencing range,[20] (3) eligibility for SSOSA (Special Sex Offender Sentencing Alternative),[21]

---

*State v. Aaron*, 95 Wn. App. 298, 302, 974 P.2d 1284, *review denied*, 139 Wn.2d 1002 (1999).

[12] *Woods v. Rhay*, 68 Wn.2d 601, 605, 414 P.2d 601, *cert. denied*, 385 U.S. 905 (1966); *State v. Swindell*, 22 Wn. App. 626, 630, 590 P.2d 1292 (1979).

[13] CrR 4.2(d); *State v. Walsh*, 143 Wn.2d 1, 6, 17 P.3d 591(2001); *State v. Wakefield*, 130 Wn.2d 464, 472, 925 P.2d 183 (1996); *State v. Paul*, 103 Wn. App. 487, 494-95, 12 P.3d 1036 (2000).

[14] 93 Wn.2d 301, 609 P.2d 1353 (1980).

[15] *Ross*, 129 Wn.2d at 284; *Barton*, 93 Wn.2d at 305 (quoting *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005 (1973)).

[16] *Barton*, 93 Wn.2d at 305 (quoting *Cuthrell*, 475 F.2d at 1366).

[17] *State v. Ward*, 123 Wn.2d 488, 513-14, 869 P.2d 1062 (1994).

[18] *State v. Cameron*, 30 Wn. App. 229, 233, 633 P.2d 901 (quoting *United States v. Sambro*, 454 F.2d 918, 920 (D.C. Cir. 1971)), *review denied*, 96 Wn.2d 1023 (1981).

[19] *In re Pers. Restraint of Vensel*, 88 Wn.2d 552, 555, 564 P.2d 326 (1977); *State v. Dennis*, 45 Wn. App. 893, 898 n.2, 728 P.2d 1075 (1986), *review denied*, 108 Wn.2d 1007 (1987).

[20] *State v. Moon*, 108 Wn. App. 59, 62, 29 P.3d 734 (2001); *cf. State v. Paul*, 103 Wn. App. 487, 498, 12 P.3d 1036 (2000) (defendant entered plea knowing there was a dispute about the appropriate range).

[21] *State v. Kissee*, 88 Wn. App. 817, 822, 947 P.2d 262 (1997).

(4) mandatory community placement,[22] (5) restitution,[23] and (6) any mandatory minimum sentence.[24] "Collateral" consequences include (1) sex offender registration,[25] (2) commitment under the sexually violent predator act,[26] (3) extending jurisdiction over restitution,[27] (4) mandatory DNA (deoxyribonucleic acid) testing,[28] (5) the right to bear arms,[29] (6) deportation,[30] (7) return to a juvenile institution,[31] (8) habitual criminal proceedings,[32] and (8) parole revocation.[33] In order to plead knowingly, voluntarily and intelligently, a defendant must be informed of each "direct consequence," but not of each "collateral consequence";[34] and if he or she is not advised of a "direct consequence," the plea must be set aside.[35]

[22] *Ross,* 129 Wn.2d at 284; *see also State v. Hurt,* 107 Wn. App. 816, 829, 27 P.3d 1276 (2001); *Aaron,* 95 Wn. App. at 302; *State v. Rawson,* 94 Wn. App. 293, 295, 971 P.2d 578 (1999); *but see Osguera Acevedo,* 137 Wn.2d at 203 (community placement not a direct consequence because defendant was expected to be deported upon release from prison).

[23] *Cameron,* 30 Wn. App. at 233.

[24] *Wood,* 87 Wn.2d at 513 (pre-Sentencing Reform Act of 1981).

[25] *Ward,* 123 Wn.2d at 513-14; *State v. Clark,* 75 Wn. App. 827, 831, 880 P.2d 562 (1994).

[26] *In re Pers. Restraint of Paschke,* 80 Wn. App. 439, 444, 909 P.2d 1328 (1996).

[27] *State v. Shultz,* 138 Wn.2d 638, 647-48, 980 P.2d 1265 (1999), *cert. denied,* 529 U.S. 1066 (2000).

[28] *State v. Olivas,* 122 Wn.2d 73, 98, 856 P.2d 1076 (1993).

[29] *In re Pers. Restraint of Ness,* 70 Wn. App. 817, 823-24, 855 P.2d 1191 (1993), *review denied,* 123 Wn.2d 1009 (1994).

[30] *State v. Holley,* 75 Wn. App. 191, 196, 876 P.2d 973 (1994); *State v. Malik,* 37 Wn. App. 414, 416, 680 P.2d 770, *review denied,* 102 Wn.2d 1023 (1984).

[31] *State v. Reid,* 40 Wn. App. 319, 323, 698 P.2d 588 (1985).

[32] *State v. Mace,* 97 Wn.2d 840, 841, 650 P.2d 217 (1982); *Barton,* 93 Wn.2d at 305.

[33] *State v. Brown,* 29 Wn. App. 770, 778, 630 P.2d 1378, *review denied,* 96 Wn.2d 1013 (1981).

[34] *Ward,* 123 Wn.2d at 512; *State v. Perkins,* 108 Wn.2d 212, 218, 737 P.2d 250 (1987); *Barton,* 93 Wn.2d at 305.

[35] *State v. Elmore,* 36 Wn. App. 38, 40, 671 P.2d 292 (1983); *Wood,* 87 Wn.2d at 511.

This somewhat arbitrary dichotomy has started to break down. In *State v. Oseguera Acevedo*,[36] the defendant pleaded guilty to a drug charge. He was told that he would receive substantial prison time, and that he would likely be deported when released. He was not told that he would be subject to community placement if not deported. When he discovered that community placement was required, he moved to withdraw his plea, but the trial court denied his motion. On appeal, two judges of Division Three of this Court held that community placement was a "direct" consequence of his guilty plea, and that the record did not show he had been advised of that consequence. Thus, they set his plea aside.[37] A dissenting judge reasoned in part that any failure to advise could not have affected the defendant's decision to plead guilty, because he knew he was likely to be deported upon release. Thus, the dissenting judge would have affirmed the trial court.[38]

The Supreme Court granted review and issued three opinions.[39] In the first opinion, four justices reasoned that under *State v. Ross*[40] "a mandatory period of community placement is a 'direct consequence' of a plea of guilty concerning which the defendant must be informed before entering a voluntary plea of 'guilty.' "[41] The four justices further reasoned, however, that there was "no indication the term of community placement was 'material' or relevant to the decision by [defendant] to plead guilty."[42] Thus, the four justices said, "[o]ne cannot logically conclude [that the defendant's] mandatory term of community placement is a

---

[36] 88 Wn. App. 232, 234, 945 P.2d 225 (1997), *rev'd*, 137 Wn.2d 179, 970 P.2d 299 (1999).

[37] 88 Wn. App. at 237-38.

[38] 88 Wn. App. at 238-39.

[39] 137 Wn.2d 179.

[40] 129 Wn.2d 279, 916 P.2d 405 (1996).

[41] 137 Wn.2d at 192 (quoting *Ross*, 129 Wn.2d at 280).

[42] 137 Wn.2d at 194.

'direct consequence' of his plea of guilty,"[43] and the plea should be upheld.

In the second opinion, three justices thought that the defendant had properly been advised of community placement and that the plea should thus be upheld.[44] They had no occasion to reach the question whether defective advice of a "direct consequence" renders a plea invalid only if it materially affects the defendant's decision to plead guilty.

In the third opinion, two justices reasoned that defective advice of a "direct consequence" renders a plea invalid only if it materially affects the defendant's decision to plead; that the advice in issue materially affected the defendant's decision to plead; and thus that his plea should be set aside. Hence, all six justices who addressed the question held that defective advice concerning a "direct consequence" renders a guilty plea invalid only if it materially affects the defendant's decision to enter that plea.

In our view, *Oseguera Acevedo*[45] shifts the method by which a Washington court analyzes whether a guilty plea is invalid due to incomplete or inaccurate advice about one of its consequences. From *Barton* to *Oseguera Acevedo*, the Supreme Court seemed to focus on the consequence about which the defendant was uninformed or misinformed; to label that consequence "direct" or "collateral"; and to uphold or overturn the plea accordingly.[46] In *Oseguera Acevedo*, six justices said that it is no longer enough just to label the relevant consequence as "direct" or "collateral"; it is also necessary to examine whether the defective advice concerning that consequence materially affected the defendant's decision to plead guilty.

This shift seems both logical and sensible. The very purpose of requiring that a defendant be advised accurately about the consequences of pleading guilty is to ensure that the defendant's decision to plead guilty is made knowingly, voluntarily, and intelligently. If inaccurate advice about a

---

[43] 137 Wn.2d at 196.

[44] 137 Wn.2d at 204 (Johnson, J., concurring).

[45] 137 Wn.2d 179, 970 P.2d 299 (1999).

[46] *See, e.g., Ross*, 129 Wn.2d at 287-88.

consequence materially taints the defendant's decision, the plea should be set aside; but if inaccurate advice about a consequence does not materially taint the defendant's decision, the plea should not be set aside. In neither case should it matter whether the consequence in issue is labeled "direct" or "collateral."

█ If our perception of this shift is correct, three questions will determine whether a plea of guilty was initially invalid due to incomplete or inaccurate advice about one or more of its consequences. (1) Was the defendant incompletely or inaccurately advised about one or more consequences of the plea? (2) *Could* the defective advice have materially affected the defendant's decision to plead guilty? (3) *Did* the defective advice materially affect the defendant's decision to plead guilty? The first and third questions are factual. The second question is legal and reflects that some consequences are so minor (i.e., so "collateral") the law will not recognize them as affecting the decision to plead guilty. If the answer to any question is no, the remaining questions need not be reached, and the plea should be upheld. If the answer to all three questions is yes, the plea should be set aside.

The first question is not disputed here. The parties agree that they miscalculated McDermond's standard range, and thus that he had the wrong standard range in mind when he decided to plead guilty.

█ The second question is disputed here. The State claims that the wrong range could not have affected McDermond's decision to plead guilty because he thought the range was higher, not lower, than it really was. McDermond responds that having the wrong range in mind can materially skew the decision to plead guilty or go to trial, regardless of whether the wrong range is too high or too low. As the following cases demonstrate, McDermond is correct.

In *State v. Walsh*,[47] the defendant pleaded guilty thinking his standard range was 86-114 months when it really was 95-125 months. He claimed on appeal that his decision to plead guilty was not knowing, voluntary and intelligent because he had thought the standard range was *lower* than it really was. Agreeing, the Supreme Court concluded that the plea "was involuntary based upon the mutual mistake about the standard range sentence."[48] The court held that "[w]here a plea agreement is based on misinformation, as in this case, generally the defendant may choose specific enforcement of the agreement or withdrawal of the guilty plea," unless "there are compelling reasons not to allow that remedy."[49]

In *State v. Moon*,[50] the defendant pleaded guilty thinking that his standard range was 209-277 months when it was really 175-236 months. He claimed on appeal that his decision to plead guilty was not knowing, voluntary and intelligent because he had thought his standard range was *higher* than it really was. Agreeing, Division Three of this Court reasoned that "[u]nder *Walsh*, when a mutual mistake occurs regarding a standard sentence range, a defendant may choose to either specifically enforce the plea agreement, or to withdraw the plea."[51] Rejecting the same argument the State now makes to us, the entire panel said:

> The State argues that Mr. Moon cannot show he was prejudiced by the mistake, because . . . [his] standard range was below, not above, the range he was told. It is true that the cases cited [apparently referring to *State v. Walsh*[52] and *State v. Perkins*[53]] involve the situation where a defendant was

---

[47] 143 Wn.2d 1, 17 P.3d 591 (2001). For a similar case from the Court of Appeals, see *Elmore*, 36 Wn. App. 38.

[48] *Walsh*, 143 Wn.2d at 8.

[49] *Walsh*, 143 Wn.2d at 8-9.

[50] 108 Wn. App. 59, 29 P.3d 734 (2001).

[51] 108 Wn. App. at 63.

[52] 143 Wn.2d 1.

[53] 46 Wn. App. 333, 730 P.2d 712 (1986).

informed of a lower standard range, only to discover after the plea that the standard range was higher. However, the cases do not make this distinction. In other words, the cases simply state that where a plea agreement is based on "misinformation," the defendant may choose his remedy. *Walsh*, 143 Wn.2d at 8-9. This choice of remedy is not limited to the situation where the defendant is informed of a standard range and subsequently becomes aware that the range is greater. Rather, the remedy is triggered when the defendant enters a plea that is based on misinformation.[54]

And Judge Brown noted in his concurrence:

[T]he risk management decisions of a defendant inherent in plea bargaining bear equally in situations where, as here, the correct standard range is lower than the mistaken standard range upon which a plea is entered. A defendant may evaluate the risks of trial versus guilty plea far differently if faced with a 12-month plus one day bottom of the standard range, rather than a 120-month bottom of the standard range. Thus, contrary to the State's argument, we logically should not intrude upon a personal decision-making process based upon known risks.[55]

In light of *Moon*, we hold that defective advice about the standard range *can* materially affect a defendant's decision to plead guilty, whether the defective advice places the range too high or too low.

The third question, it will be remembered, is whether the erroneous advice about McDermond's standard range actually and materially affected his decision to plead guilty. The trial court failed to address that question, and we cannot answer it from the present record. Accordingly, we reverse the order appealed from and remand to the trial court for further proceedings. On remand, the trial court shall hold a hearing on whether the parties' mutual mistake about McDermond's standard range materially affected his decision to plead guilty. If the trial court finds that Mc-Dermond's decision to plead guilty was actually and materially affected by the error in his standard range, it shall

---

[54] *Moon*, 108 Wn. App. at 63-64.

[55] *Moon*, 108 Wn. App. at 64 (Brown, J., concurring).

again order that his pleas be set aside and that the case proceed to trial. If the trial court finds that McDermond's decision to plead guilty was not actually and materially affected by the error in his standard range, it shall order that his pleas not be set aside and that the case proceed to sentencing. This opinion is a decision terminating review.[56]

Reversed and remanded for further proceedings.

SEINFELD and HOUGHTON, JJ., concur.