[Nos. 30954-8-II; 31057-1-II.   Division Two.   July 7, 2005.]

*In the Matter of the Personal Restraint of* BRIAN MATTHEWS, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN DAVID MATTHEWS, *Appellant.*

*Sheri L. Arnold,* for appellant/petitioner.

*Gerald A. Horne, Prosecuting Attorney,* and *Donna Y. Masumoto* and *Kathleen Proctor, Deputies,* for respondent.

¶1 HOUGHTON, J. — Brian Matthews appeals the denial of his petition to withdraw his guilty plea and his exceptional sentence. He argues that he did not enter a knowing, voluntary, and intelligent plea because he based his decision on an erroneous standard sentencing range calculation. We affirm the denial of his petition for two reasons. First, because Matthews entered the plea believing that his standard range was higher, when in fact it was lower. Second, because tenable reasons support the superior court's conclusion that his plea did not result in a manifest injustice. Finally, because the court imposed the exceptional sentence on findings not made by a jury, we reverse Matthews' exceptional sentence and remand for resentencing.

FACTS

¶2 In 1999, Matthews pleaded guilty to first and third degree assault of a child (counts I and II, respectively). His offender score calculated as 6, resulting in a 126 to 216 month standard range on count I and a 22 to 29 month standard range on count II. He entered the plea knowing that the State would seek an exceptional sentence of 250 months on count I and a high end sentence of 29 months on count II.

¶3 In 2002 after his conviction and sentence became final, Matthews filed a personal restraint petition seeking to withdraw his guilty plea because he based his decision to plead on an offender score calculated with convictions that had "washed out" under *State v. Smith*, 144 Wn.2d 665, 30 P.3d 1245, 39 P.3d 294 (2001). His offender score without the "washed out" convictions was 4, resulting in a 129 to 171 month standard range on count I and a 12 to 16 month standard range on count II.

¶4 Our chief judge issued an order transferring the petition to the superior court for a hearing to determine whether, under *State v. McDermond*, 112 Wn. App. 239, 47 P.3d 600 (2002), the incorrect offender score had materially affected Matthews' decision to plead guilty. After a hearing in which Matthews testified, the court denied the petition, finding that Matthews had not materially relied on his erroneous offender score in deciding to plead guilty.

¶5 The court then resentenced Matthews using the correct offender score. The court imposed an exceptional sentence of 250 months on count I and 60 months on count II. The court based the exceptional sentence on its findings that Matthews' crimes involved a particularly vulnerable victim, abuse of trust, and deliberate cruelty.

¶6 Matthews appeals.

ANALYSIS

Petition to Withdraw Guilty Plea

¶7 A defendant may withdraw his guilty plea if it was invalidly entered or if its enforcement would result in a manifest injustice. CrR 4.2(f); *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297-98, 88 P.3d 390 (2004). To be valid, a guilty plea must be knowing, intelligent, and voluntary. *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). "An involuntary plea produces a manifest injustice." *Isadore*, 151 Wn.2d at 298.

¶8 Matthews argues that he entered into an invalid plea based on an erroneous belief about a higher standard range for sentencing. Other divisions of this court share Matthews' position. *See State v. Murphy*, 119 Wn. App. 805, 81 P.3d 122 (2002), *review denied*, 152 Wn.2d 1005 (2004); and *State v. Moon*, 108 Wn. App. 59, 29 P.3d 734 (2001), which relied on *State v. Walsh*, 143 Wn.2d 1, 17 P.3d 591 (2001).

¶9 In *Walsh*, the defendant pleaded guilty based on an erroneous standard range that was lower than the correct

range. Our Supreme Court held that "Walsh has established that his guilty plea was involuntary based upon the mutual mistake about the standard range sentence. Where a plea agreement is based on misinformation, as in this case, generally the defendant may choose specific enforcement of the agreement or withdrawal of the guilty plea." *Walsh*, 143 Wn.2d at 8-9. We believe that *Walsh*'s statement that "misinformation" renders a guilty plea invalid should not be broadly construed to include Matthews' situation because Walsh was misinformed about a greater, not a lesser, sentencing consequence.

¶10 In *Isadore*, 151 Wn.2d 294, our Supreme Court overruled, sub silentio, our holding in *McDermond*, 112 Wn. App. at 248, that required the defendant to demonstrate that the misinformation materially affected the decision to plead guilty.[1] After *Isadore*, a defendant "need not make a special showing of materiality" in order for misinformation to render a guilty plea invalid, but he must still show that the misinformation concerned "a *direct* consequence of [the] guilty plea." 151 Wn.2d at 296 (emphasis added). This requirement has long been the law of Washington. *See State v. Ross*, 129 Wn.2d 279, 285, 916 P.2d 405 (1996); and *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980) ("Defendant must be informed of all the direct consequences of his plea prior to acceptance of a guilty plea.").

¶11 Under *Isadore*, we must determine whether being erroneously informed of a higher offender score and standard range involves a direct consequence of the plea agreement. In *McDermond*, 112 Wn. App. at 244, relying on *Moon*, we suggested that it was. Upon further review, we disagree with *Moon*'s analysis.

¶12 A "direct" consequence includes one that " 'represents a definite, immediate and largely automatic effect on

---

[1] *McDermond* followed the decision in *State v. Acevedo*, 137 Wn.2d 179, 194-96, 970 P.2d 299 (1999) (plurality). The *Isadore* court noted, however, that plurality opinions retain limited precedential value, and that the *Acevedo* opinion did not "establish[ ] a new analytical framework for determining the validity of a guilty plea." *Isadore*, 151 Wn.2d at 302.

the range of the defendant's punishment.'" *Ross,* 129 Wn.2d at 284 (quoting *Barton,* 93 Wn.2d at 305). Under this definition, the courts have held the following consequences to be "direct": the statutory maximum sentence,[2] ineligibility for the Special Sex Offender Sentencing Alternative program,[3] the obligation to pay restitution,[4] mandatory community placement,[5] consecutive sentences,[6] and any mandatory minimum term.[7]

¶13 The common thread of definitive and additional punishment weaves through each "direct" sentencing consequence. *See Berry v. United States,* 412 F.2d 189, 192 (3d Cir. 1969) ("When one enters a plea of guilty he should be told what is the worst to expect. At the plea he is entitled to no less—at sentence he should expect no more."); 5 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 21.4(d), at 167 (2d ed. 1999) ("Traditionally, the emphasis in the case law has been upon the requirement that the judge inform the defendant of the maximum possible punishment.") (quoting *ABA Standards Relating to Pleas of Guilty* 27 (Approved Draft, 1968)). In *Ross,* 129 Wn.2d at 285, our Supreme Court recognized as much: "To identify a punishment in the context of a direct consequence of a guilty plea, we examine whether the effect enhances the defendant's sentence or alters the standard of punishment." (citing *State v. Ward,* 123 Wn.2d 488, 513, 869 P.2d 295 (1994) and *Barton,* 93 Wn.2d at 306). And in *Isadore,* 151 Wn.2d at 302, the court

---

[2] *State v. Vensel,* 88 Wn.2d 552, 555, 564 P.2d 326 (1977).

[3] *State v. Kissee,* 88 Wn. App. 817, 822, 947 P.2d 262 (1997).

[4] *State v. Cameron,* 30 Wn. App. 229, 233, 633 P.2d 901, *review denied,* 96 Wn.2d 1023 (1981).

[5] *Ross,* 129 Wn.2d at 284. *But see Acevedo,* 137 Wn.2d at 197-98 (community placement not a direct consequence where the defendant expected to be deported on release from incarceration).

[6] *In re Pers. Restraint of Williams,* 21 Wn. App. 238, 240, 583 P.2d 1262 (1978); *see also United States v. Myers,* 451 F.2d 402 (9th Cir. 1972).

[7] *Wood v. Morris,* 87 Wn.2d 501, 513, 554 P.2d 1032 (1976).

specifically noted that it "adhere[d] to the analytical framework applied in *Ross*."

¶14 When a defendant enters a plea agreement and later learns of a requirement to pay restitution, to serve consecutive sentences, or to serve a mandatory community placement period, his unawareness of the full extent of punishment entitles him to withdraw his guilty plea. Thus, a defendant is entitled to the same relief where he agrees to plead guilty only to later learn of a miscalculated offender score and sentencing range higher than he had initially believed.

¶15 But where the defendant enters a plea agreement under the erroneous belief that his offender score and standard range are higher than in fact they are, he is not entitled to withdraw that plea under a claim that it was invalidly entered. In the former instance, the defendant suffers a manifest injustice because his sentence will be enhanced, but in the latter instance he does not similarly suffer because his sentence can only become less onerous.

¶16 The *Moon* court concluded:

> It is true that the cases cited involve the situation where a defendant was informed of a lower standard range, only to discover after the plea that the standard range was higher. However, the cases do not make this distinction. In other words, the cases simply state that where a plea agreement is based on "misinformation," the defendant may choose his remedy. This choice of remedy is not limited to the situation where the defendant is informed of a standard range and subsequently becomes aware that the range is greater. Rather, the remedy is triggered when the defendant enters a plea that is based on misinformation.

108 Wn. App. at 63-64 (citation omitted). Contrary to *Moon*, we believe that the law does distinguish between the two situations where an erroneous offender score can come into play. As noted, the law permits withdrawal of a plea only when the misinformation has the effect of "enhanc[ing] the defendant's sentence or alter[ing] the standard of punishment." *Ross*, 129 Wn.2d at 285.

¶17 We do not hold that a defendant is not entitled to withdraw his guilty plea on the basis of a misapprehended higher offender score and standard range. We hold only that such erroneous information does not render the guilty plea invalid on its face. A defendant seeking to withdraw his guilty plea, based on an assumption that the sentence would be harsher than it was in fact, may still do so if he can meet the "demanding standard" of CrR 4.2(f), which requires a "manifest injustice, i.e., 'an injustice that is obvious, directly observable, overt, not obscure.' " *Branch*, 129 Wn.2d at 641 (quoting *State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991)); *see also United States v. Graves*, 98 F.3d 258, 259-60 (7th Cir. 1996) (discussing the defendant's burden when seeking to withdraw plea entered on the erroneous belief that good-time credits could not be obtained).

¶18 Here, the court concluded that Matthews' guilty plea had not resulted in a manifest injustice. We review that decision for an abuse of discretion. *State v. S.M.*, 100 Wn. App. 401, 409, 996 P.2d 1111 (2000). A court abuses its discretion only when it bases its decision on untenable grounds or reasons. *State v. O'Neal*, 126 Wn. App. 395, 409, 109 P.3d 429 (2005).

¶19 According to Matthews, his plea resulted in a manifest injustice because the higher and erroneous standard ranges made him more reluctant to go to trial. We disagree.

¶20 First, regardless of the specific sentencing ranges, Matthews knew when he entered the plea that the State would seek an exceptional sentence of 250 months on count I and a high end sentence of 29 months on count II. And second, the court had the opportunity to hear Matthews' testimony that he made the decision to plea based on the erroneous sentencing ranges. The court found Matthews' testimony to be evasive and without candor or credibility. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (we do not disturb credibility determinations on appeal). Based on the foregoing, the court did not abuse its discretion in denying Matthews' petition.

Exceptional Sentence

¶21 Matthews further argues that the court erred in imposing exceptional sentence on his two convictions. The State correctly concedes that this sentence must be reversed because the court based them on facts not found by a jury. *See Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 2536, 159 L. Ed. 2d 403 (2004).

¶22 Affirmed in part, reversed in part, and remanded for resentencing.

HUNT and VAN DEREN, JJ., concur.