IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50748-0-II |
| Respondent, | |
| v. | |
| DANIEL W. COMPTON, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Daniel W. Compton appeals the trial court's denial of his motion to withdraw his guilty plea to one count of first degree burglary and one count of third degree assault. He argues that his plea was not voluntary because he was not informed about the required term of community custody on his third degree assault conviction. In a statement of additional grounds (SAG), Compton claims that (1) he was provided ineffective assistance of counsel, (2) he did not have sufficient time to review his plea agreement, and (3) the imposed community custody conditions were improper. We affirm.

FACTS

A.    PLEA AGREEMENT AND SENTENCE

Daniel Compton entered a guilty plea to one count of first degree burglary and one count of third degree assault. At the hearing, the trial court asked Compton whether he had reviewed his plea agreement with his attorney. Compton responded that he had. Compton also responded that

his attorney had answered all of his questions about the plea agreement. And Compton affirmatively answered that he understood the crimes with which he was charged, understood the elements of those crimes, and understood the sentence that went with each charged crime.

The plea agreement informed Compton that as a consequence of entering a guilty plea, he would be required to serve 18 months' community custody for his first degree burglary conviction. The trial court also informed Compton that his first degree burglary charge carried a community custody term of 18 months following his release from prison. Neither the plea agreement nor the trial court informed Compton that his third degree assault charge also carried a 12 month community custody term, which would be served concurrent to his 18 month community custody term.[1]

Prior to sentencing, Compton filed a motion to withdraw his guilty plea. Compton argued that his plea was not voluntary because he was misinformed of the community custody term he faced for his third degree assault charge. The trial court ruled that because the 12 month community custody term for third degree assault was to be served concurrent to the 18 month community custody term for first degree burglary, there was "no practical or legal consequence." 3 Verbatim Report of Proceedings (VRP) (Aug. 9, 2017) at 7. The court, therefore, denied Compton's motion to withdraw his guilty plea.

---

[1] The State references an April 2017 hearing in its brief. The State asserts that the trial court informed the parties of the omitted community custody condition at this April hearing. However, that hearing is not in our record for review.

B.    REQUESTS FOR NEW COUNSEL

Over the course of his case, Compton voiced his dissatisfaction with his court-appointed counsel.  Prior to his plea hearing, Compton sent the director of the Department of Assigned Counsel (DAC) a letter asking for a new attorney.  In this letter, Compton claimed that his attorney was routinely unprepared, late for court, and showed disinterest in his case.  Compton also accused his attorney of referring to his case as "'Hillbilly and the Jerry Springer Show.'"  Clerk's Papers (CP) at 25.

DAC did not respond to this letter.  Compton sent a second letter "in continuance" of his first letter asking why he had not been provided new counsel.  CP at 31.  He also claimed that his attorney had told him that "this is the best you're going to get and if you take it to trial, you would be murdered."  CP at 32.

Compton's attorney asked to withdraw from the case prior to Compton's sentencing.  Compton's attorney informed the court that their relationship had "soured considerably" and asked that new counsel be appointed to handle Compton's motion to withdraw his guilty plea.  2 VRP (May 8, 2017) at 3.  Compton was appointed new counsel, who filed a motion to withdraw the guilty plea on Compton's behalf.  Compton's new counsel also represented Compton at sentencing.

C.    SENTENCING

At sentencing, the State recommended the low end of Compton's sentencing range based on its plea agreement with Compton.  Compton's counsel asked the court to follow the State's recommendation.  The sentencing court followed the State's recommendation and sentenced Compton to 21 months of confinement followed by 18 months of community custody for the first

degree burglary conviction and 3 months of confinement followed by 12 months of community custody for the third degree assault conviction, with both sentences to be served concurrently.

Compton appeals.

ANALYSIS

A.   WITHDRAWAL OF GUILTY PLEA

1.    Standard of Review

We review the trial court's ruling on a motion to withdraw a guilty plea for an abuse of discretion. *State v. A.N.J.*, 168 Wn.2d 91, 106, 225 P.3d 956 (2010). A trial court abuses its discretion if its ruling "'is manifestly unreasonable or based upon untenable grounds or reasons.'" *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). "'A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard.'" *Id.* (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

2.    The Trial Court did not Abuse its Discretion

Compton argues that he should be allowed to withdraw his guilty plea because the plea agreement failed to inform him that he would be required to serve 12 months of community custody for his third degree assault conviction. He argues that because he was misinformed of a direct consequence of his plea, the trial court abused its discretion in denying his motion. We disagree.

"Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." *State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). This standard is reflected

in CrR 4.2(f), which requires the trial court to allow a defendant to withdraw a guilty plea "whenever it appears that the withdrawal is necessary to correct a manifest injustice." This is a demanding standard, and it requires the defendant to show "'an injustice that is obvious, directly observable, overt, not obscure.'" *State v. Robinson*, 172 Wn.2d 783, 796, 263 P.3d 1233 (2011) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)).

An involuntary plea results in a manifest injustice.[2] *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996). Although a defendant need not be informed of all potential consequences of a plea, he or she must be advised of all direct consequences for the plea to be voluntary. *Id.* Community custody is a direct consequence of a guilty plea because it represents "a definite, immediate and largely automatic effect on defendant's range of the defendant's punishment." *Id* (quoting *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)).

Here, the plea agreement stated that the first degree burglary conviction carried a community custody term of 18 months. The agreement did not inform Compton that the third degree assault count carried a community custody term of 12 months. However, regardless of this omission, Compton was informed that a direct consequence of entering a guilty plea was a community custody term of 18 months. Because the trial court imposed a sentence where Compton's sentence for his two convictions would be served concurrently, and Compton was

---

[2] The State argues that Compton must show that his misstated community custody term resulted in actual and substantial prejudice. This standard only applies when a defendant moves to withdraw a plea after judgment has been entered because such motion is a collateral attack. *State v. Buckman*, 190 Wn.2d 51, 60, 409 P.3d 193 (2018). Here, Compton filed a motion to withdraw his guilty plea prior to sentencing, not after a judgement had been entered. Thus, the heightened standard on collateral review does not apply here.

informed of and sentenced to 18 months of community custody for the first degree burglary conviction, Compton received the same punishment as he would have received had he been informed of the 12 months of community custody for the third degree assault conviction. *See State v. Smith*, 137 Wn. App. 431, 438, 153 P.3d 898 (2007) (holding that there was no manifest injustice where plea agreement stated the incorrect sentencing range for one conviction because the defendant was correctly informed of the sentencing range for the controlling conviction, and defendant received the same punishment under the correct sentencing range as he would have received under the erroneous range). Compton's total term of his sentence was not affected. Therefore, Compton has failed to show a manifest injustice.

Nonetheless, Compton argues that he will be subjected to greater punishment by serving the concurrent community custody terms with the violent crime of assault. This entire argument is premised on the false contention that Compton's burglary conviction was a "non-violent crime," and that his assault conviction was "a *violent* crime." Br. of Appellant at 8 (emphasis in original). Compton posits that his community corrections officer will subject him to additional punishment once the officer "take[s] note" of the violent assault crime associated with his supervision. Br. of Appellant at 8.

Contrary to Compton's repeated assertions, first degree burglary, a class A felony, is a violent offense. RCW 9.94A.030(55)(a)(i);[3] RCW 9A.52.020(2). Third degree assault, a class C felony, is not a violent offense. RCW 9A.36.031(2); RCW 9.94A.030(55)(a)(i). This was made

---

[3] RCW 9.94A.030 has been amended since the events of this case transpired. However, the amendments do not materially affect the statutory language relied on by this court. Accordingly, we refrain from including the word "former" before RCW 9.94A.030.

clear in Compton's plea agreement, which showed that the imposed 18 months' community custody term was for first degree burglary, a violent offense. Compton's argument that he will be subjected to additional, unforeseeable punishment once his supervising officers discover that he committed the "*violent* crime" of assault is without merit. Br. of Appellant at 8.

Compton was informed that a direct consequence of entering a guilty plea was an 18 month community custody term for first degree burglary. The trial court imposed concurrent sentences for Compton's two convictions, which included 18 months of community custody for first degree burglary. Thus, Compton received the same punishment as he would have received had he been informed of the 12 months of community custody for the third degree assault conviction. Therefore, Compton's plea was voluntary and it was not manifestly unreasonable for the trial court to deny his motion to withdraw his plea. We affirm.

B.      STATEMENT OF ADDITIONAL GROUNDS (SAG)

       1.      Ineffective Assistance of Counsel

Compton claims that he was provided ineffective assistance of counsel throughout the course of his case. We disagree.

          a.      Legal principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). An ineffective assistance of counsel claim is a mixed question of fact and law that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective

assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *Grier*, 171 Wn.2d at 32-33 (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). If the defendant fails to satisfy either prong, the defendant's ineffective assistance of counsel claim fails. *Id.* at 33.

Counsel's performance is deficient if it "falls 'below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). We engage in a strong presumption that counsel's performance was reasonable. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A defendant may overcome this presumption by showing that "'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)). Recently, our Supreme Court held that the record before the reviewing court must be sufficient for this court to determine what counsel's reasons for the decision is in order to evaluate whether counsel's reasons were legitimate. *State v. Linville*, 191 Wn.2d 513, 525-26, 423 P.3d 842 (2018). If counsel's reasons for the challenged action are outside the record on appeal, the defendant must bring a separate collateral challenge. *Id.*

To establish prejudice, the defendant must "prove that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862. Although this standard is lower than a preponderance standard, the defendant must affirmatively "show more than a 'conceivable effect on the outcome.'" *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (internal quotation marks

omitted) (quoting *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006)).  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Id.*

        b.      Compton fails to show ineffective assistance of counsel

Compton argues that his attorney was ineffective because he (1) failed to withdraw as counsel, (2) characterized his case as "'Hillbilly [and the] Jerry Springer Show,'" (3) pressured him into taking a plea deal, and (4) failed to request an exceptional mitigated sentence.  SAG at 2.  We disagree.

Compton's assignments of error primarily stem from a letter he sent to the director of the DAC asking for a new attorney to represent him.  In this letter, Compton accused his attorney of being unprepared, arriving at court late, and not taking an interest in his case.  Compton also complained that his attorney had referred to his case as "'Hillbilly and the Jerry Springer Show.'"  CP at 25.  Compton filed another letter "in continuance" of the first letter two months later.  CP at 31.  In the second letter, Compton claimed that his attorney once told him that "'this is the best you're going to get and if you take it to trial, you would be murdered.'"  CP at 32.

Compton fails to show ineffective assistance of counsel based on his letters.  The record shows that Compton's counsel did withdraw from representing him.  His attorney explained to the court that the relationship had "soured considerably" and asked that new counsel be appointed to handle Compton's motion to withdraw his guilty plea.  2 VRP (May 8, 2017) at 3.  Compton was appointed new counsel, who filed a motion to withdraw Compton's guilty plea on Compton's behalf.  Given that Compton's attorney did withdraw from representing him, Compton fails to

9

show that his attorney's performance fell below an objective standard of reasonableness. Compton fails to show ineffective assistance of counsel on this basis.

Compton also fails to show ineffective assistance of counsel based on his attorney's alleged statements. There is no evidence in the record showing that Compton's counsel referred to his case as a "'Hillbilly [and the] Jerry Springer Show'" or told Compton that he would be murdered if he took his case to trial. SAG at 2. The only support for this claim is Compton's letters accusing his attorney of making these statements. However, the letters contain no other detail regarding the circumstances under which the statements were allegedly made, when they were allegedly made, or how they influenced Compton's decision to accept the State's plea offer. The burden is on Compton to show deficient representation based on the record established in the proceedings below. *See State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995), *as amended* (Sept. 13, 1995). If Compton wishes a reviewing court to consider matters outside the record to support his claim, then a personal restraint petition is the appropriate vehicle for bringing this matter before the court. *See id.* (a personal restraint petition is the appropriate means for this court to review matters outside the appellate record).

Finally, Compton fails to show ineffective assistance of counsel based on his attorney's failure to ask for an exceptional mitigated sentence. The record shows that the State recommended a sentence at the low end of Compton's sentencing range based on the plea agreement it offered to Compton. Compton's attorney asked the court to follow the State's recommendation. The plea agreement does not show that the State agreed Compton could argue for an exceptional mitigated sentence at sentencing. And there is no indication in the record that the sentencing court would

have imposed an exceptional mitigated sentence had Compton's attorney made this request. Thus, Compton fails to show that the result of the proceeding would have differed had Compton's attorney requested an exceptional mitigated sentence. Therefore, Compton's ineffective assistance of counsel claim fails.

2.  Sufficient Time to Review Plea Agreement

Compton claims that he was not allowed sufficient and adequate time to understand the charges against him before he entered a guilty plea. However, before Compton pleaded guilty to the charges, the trial court asked Compton whether he reviewed the plea agreement with his attorney. Compton replied that he had, and he also stated that his attorney had answered all of his questions about the plea agreement. Compton also affirmatively answered that he understood the crimes with which he was charged, understood the elements of those crimes, and understood the sentence that went with each of the charged crimes. Therefore, the record does not support Compton's contention that he was not provided adequate time to understand the nature of the charges against him.

3.  Community Custody Conditions

Finally, Compton challenges the community custody conditions imposed as part of his sentence. Specifically, Compton's challenge is: "Prosecution [s]uggested & the Judge imposed improper community custody conditions." SAG at 3. Compton does not identify which community custody conditions he asserts are improper, and he does not provide any explanation as to why he believes the imposed community custody conditions are improper.

No. 50748-0-II

Although RAP 10.10 does not require Compton to refer to the record or cite to authority, it does require Compton to inform this court "of the nature and occurrence of alleged errors." RAP 10.10(c). Compton's assertion of error is too vague for this court to understand the nature and occurrence of the alleged error, and we do not reach it.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Sutton, J.

_____
Evans, J.P.T

12