# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58995-8-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DANIAL WAYNE WATTERS, | |
| Appellant. | |

CHE, J. — Danial Wayne Watters appeals his judgment and sentence for two counts of second degree assault with a deadly weapon, one count as a crime of domestic violence. He argues that his guilty plea was not knowing, voluntary, or intelligent because, at his plea hearing, the trial court misinformed him that his sentences on the two convictions, but not his enhancements, would run concurrently without acknowledging that the sentences could run consecutively if an exceptional sentence was imposed. In a statement of additional grounds, Watters also argues that the trial court erred by not entering written findings and conclusions to support an exceptional sentence, RCW 9.94A.535(2)(c) is unconstitutional as applied to him, the exceptional sentence violated his Sixth Amendment rights, and the trial court miscalculated his offender score. We disagree with all of Watters' arguments. Accordingly, we affirm.

FACTS

One evening, Watters broke into his ex-girlfriend, CL's, home where she was sleeping with her new boyfriend, AJ. Watters grabbed a golf club, hit CL in the head with it, and then proceeded to hit AJ repeatedly. AJ was flown to Harborview Medical Center for critical brain injuries as a result of the attack.

The State charged Watters with attempted first degree murder, first degree assault, first degree burglary (domestic violence), second degree assault (domestic violence), and two counts of felony violation of a domestic violence protection order (domestic violence).

In exchange for Watters' guilty plea, the State filed a third amended information charging him with second degree assault and second degree assault (domestic violence). As part of the plea agreement, Watters agreed that there should be a special finding that he was armed with a deadly weapon in both counts. Watters agreed that his criminal history was correct and complete and that his offender score was 13. In his statement of defendant on plea of guilty, Watters acknowledged that the trial court would not be bound by either party's recommended sentence and that the trial court could impose an exceptional sentence above the standard range if he was being sentenced for more than one crime and had an offender score of more than 9.

At the plea hearing, the trial court confirmed that Watters chose to plead guilty voluntarily, understood the plea form, and had adequate time to discuss the decision with his attorneys. The trial court reviewed the standard ranges, enhancements, community custody, and the maximum term of punishment for each charge. Watters agreed that his criminal history was

set forth accurately and completely and that his offender score was greater than 9. The trial court reviewed the standard sentence range with Watters given his offender score of 9 plus.

> With an offender score of nine plus, your standard range of punishment for each of these two crimes would be incarceration for not less than 63 months and not more than 84 months, plus an enhancement of 12 months. There is not an agreement regarding what the sentencing recommendation is going to be, which means that if you plead guilty to these crimes, when you are sentenced it will be up to me to decide where within that range of 63 to 84 months you should be sentenced on each case. And those two sentences will be served by you at the same time, they wouldn't be consecutive. . . . But the enhancement for the deadly weapon would—those will be consecutive.

Rep. of Proc. (RP) (Sept. 21, 2023) at 9-10. The trial court also reviewed the maximum term on each charge, confirming that Watters understood that the maximum punishment for each was 10 years in prison. The court asked Watters if he had any questions about anything in the statement on plea of guilty, to which Watters responded, "No, Your Honor. My attorney has been over it very well with me." RP (Sept. 21, 2023) at 12.

The State indicated it would be making an argument at sentencing regarding Watters' offender score and sentencing. When the trial court asked if that was covered in the statement on plea of guilty, the State explained that it was set out in the plea agreement that the State would be arguing for an exceptional sentence of 120 months as to each count, to run concurrently. The agreement also stated that Watters would ask for a sentence at the low end of the standard range. The trial court then explained the possibility of an exceptional sentence to Watters.

> There is a statute in the State of Washington, Mr. Watters, that provides when—when an offender has a score of greater than nine that the prosecution may seek a [] special sentence—an enhanced sentence based upon the fact that the offender score exceeds nine because the legislature provided for increased punishment as [] an offender score goes up what it tops out at nine. And so there's no greater punishment for someone with an offender score of ten than there is 9 or

15 than there is 9. But there is a statute that [] grants some discretion to the Court where an offender score is substantially greater than 9 of imposing a greater sentence. And the prosecutor in this case is going to be asking that your sentence be enhanced because of your offender score to the maximum of 120 months.

RP (Sept. 21, 2023) at 14.

The trial court found that Watters voluntarily made a knowing and intelligent waiver of his constitutional rights, that he understood the terms and conditions of the plea agreement. The trial court accepted Watters' guilty pleas.

At sentencing, the State argued for an exceptional sentence of 120 months as to each count, to run concurrently. Watters argued for a standard sentence at the low end of the standard range for a total of 87 months in custody and community custody to follow. The trial court explained its view of the case:

> I see no redeeming redemption, rehabilitation for Mr. Watters. He is—his motivation here was anger and violence and rage and vengeance. And he destroyed [AJ's] life: Traumatic brain injury. Can't—he is probably left significantly incapacitated to a large degree. And he had to be life-flighted to Harborview. He almost died. And he is probably lucky he didn't. And so is Mr. Watters, because then he would be looking at a murder charge; there is no doubt about it. It was attempted murder. The only reason it wasn't attempted murder is because the State was concerned with a technicality that it wasn't a burglary. Burglary in the first and assault committed therein, that's attempted murder; that's attempted murder all day long, and I wouldn't have had any problem getting there, but that's just me.

RP (Nov. 3, 2023) at 42.

The trial court emphasized Watters' extensive criminal history, noting that his offender scores were 13 and 14, respectively. The court explained, "The Free Crimes Doctrine[1] is exactly for this situation." RP (Nov. 3, 2023) at 42. On that basis, the trial court imposed an exceptional

---

[1] RCW 9.94A.535(2)(c)

upward sentence of the maximum term of 10 years on each count, ran consecutively for a total confinement period of 20 years. The trial court explained "[T]hat's the absolute maximum I can do by law, otherwise, it would be more. If I could do more, it would be more." RP (Nov. 3, 2023) at 44.

Watters appeals his exceptional sentence.

ANALYSIS

I. DIRECT APPEAL

Watters argues that his guilty plea is invalid because the trial court affirmatively misinformed him that his sentences would be served concurrently and failed to inform him that the terms could be imposed consecutively under an exceptional sentence.

A plea must be knowing, voluntary and intelligent to be valid. *State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). "Before a guilty plea is accepted, the defendant must be informed of all direct consequences of the plea." *State v. Gregg*, 196 Wn.2d 473, 483, 474 P.3d 539 (2020). A direct consequence is one that "'represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996) (quoting *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)). "Affirmative misinformation as to a direct consequence renders a plea constitutionally invalid." *Gregg*, 196 Wn.2d at 484.

Watters focuses on the trial court's comments during the plea hearing. There, the trial court explained to Watters that "those two sentences will be served by you at the same time, they wouldn't be consecutive." RP (Sept. 21, 2023) at 10. Watters contends that this amounted to

affirmative misinformation. But the context of the trial court's statements reveals that the trial court was specifically discussing standard range sentences when it said the sentences would be concurrent. RP (Sept. 21, 2023) at 10.

The trial court then went on to explain that an exceptional sentence was possible based on his offender score of 9 plus. And while the trial court noted that the State intended to ask the sentencing court to impose a total sentence amounting to the statutory maximum of one crime, it also clearly explained that the sentencing court would have discretion to depart from the standard range if it imposed an exceptional sentence. Watters was also informed that the sentencing court would not be bound by the State's recommendation in the plea agreement and in his statement on plea of guilty.

Considering the trial court's statements in their entirety, and given that Watters was repeatedly informed that the sentencing court would have discretion if it imposed an exceptional sentence based on Watters' high offender score, Watters was not misinformed of the direct consequences of his plea. Accordingly, we hold that Watters fails to show that his plea was not knowing, voluntary, and intelligent.

## II. STATEMENT OF ADDITIONAL GROUNDS

In his statement of additional grounds, Watters argues that the trial court erred by not entering written findings of fact and conclusions of law supporting the exceptional sentence. When a trial court imposes a sentence outside the standard sentencing range, the court shall set forth the reasons for its decision in written findings and conclusions. RCW 9.94A.535. Here, the trial court made written findings and conclusions in the judgment and sentence explaining its

decision to impose an exceptional sentence. The judgment and sentence shows that the trial

court imposed an exceptional sentence above the standard range on both counts by running the

term of confinement on each count consecutive and included the written explanation of "Court

ordered an exceptional sentence based on RCW 9.94.535. 120 months consecutive to 120

months." Clerk's Papers at 79. This is sufficient to comply with RCW 9.94A.535's written

findings requirement. *See State v. Friedlund*, 182 Wn.2d 388, 341 P.3d 280 (2015).

Watters also argues that the trial court violated his Sixth Amendment right to a jury trial

and that RCW 9.94A.535(2)(c) is unconstitutional as applied to him.[2] A trial court may impose

an aggravated exceptional sentence without a finding of fact by a jury when it determines that the

defendant has committed multiple current offenses and the defendant's high offender score

results in some of the current offenses going unpunished. *State v. Alvarado*, 164 Wn.2d 556,

568-69, 192 P.3d 345 (2008); RCW 9.94A.535(2)(c). Watters contends that RCW

9.94A.535(2)(c) is unconstitutional as applied to him because he did not stipulate to his criminal

history or waive his jury trial right during sentencing. But the record reflects that Watters did

agree that his criminal history was correct. And a trial court may impose an aggravated

exceptional sentence without a finding of fact by a jury when it determines that the defendant has

committed multiple current offenses and the defendant's high offender score results in some of

---

[2] Watters also mentions that his sentence violated his Fourteenth Amendment rights. But Watters does not further develop this contention, and therefore we do not address it further. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 537-38, 954 P.2d 290 (1998); *see also Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *State v. Hoffman*, 116 Wn.2d 51, 71, 804 P.2d 577 (1991).

the current offenses going unpunished. *Alvarado*, 164 Wn.2d at 568-69; RCW 9.94A.535(2)(c). Watters' arguments fail.

Watters also argues that the trial court erred by running his sentences consecutive under RCW 9.94A.589(1)(b) because his second degree assault conviction was not a "serious violent" offense. But the trial court imposed consecutive sentences as part of an exceptional sentence based on RCW 9.94A.535(2)(c), expressly departing from the standards in RCW 9.94A.589(1) and (2). *See* RCW 9.94A.535 ("A departure from the standards in RCW 9.94A.589 (1) and (2) governing whether sentences are to be served consecutively or concurrently is an exceptional sentence subject to the limitations in this section.").

Finally, Watters argues that the trial court erred by not counting four of his prior offenses as one point under the same criminal conduct analysis. Whether his prior offenses constituted the same criminal conduct calls for information outside of the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333-34, 899 P.2d 1251 (1995). Moreover, it was Watters' obligation to raise this issue at sentencing, and he bore the burden of demonstrating, to the trial court, that these offenses should be counted as one offense for scoring purposes. *State v. Graciano*, 176 Wn.2d 531, 539-40, 295 P.3d 219 (2013). But even if four of his prior offenses should have counted as 2 points,[3] Watters' offender scores on his current offenses would still

_____

[3] One of the four prior adult convictions sharing the same offense date in 2005 was a second degree assault. Second degree assault is a violent offense and because he is being sentenced for second degree assault convictions, a prior second degree assault conviction is scored as 2 points. Former RCW 9.94A.525(8) (2022).

No. 58995-8-II

have been over 9, and his standard sentence range would be the same. Moreover, Watters stipulated that his offender score was over 9. Accordingly, Watters' claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Cruser, C.J.

Price, J.