**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 17, 2020

*Steree, C. J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 17, 2020

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 97517-5 |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| SEBASTIAN MICHAEL GREGG, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed: September 17, 2020 |

JOHNSON, J.—This case addresses the constitutionality of RCW 9.94A.535(1) placing the burden of establishing mitigating circumstances on juvenile defendants sentenced in adult court. A second issue is whether a guilty plea may be withdrawn based on affirmative misinformation of a four-year felony firearm registration requirement. Sebastian Gregg seeks reversal of a published Court of Appeals decision affirming his sentence based on convictions of first degree murder and first degree burglary, both with firearm enhancements, and first degree arson. We affirm and conclude that the allocation of the burden of proof

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, is constitutional and that Gregg's plea was not involuntary.

FACTS AND PROCEDURAL HISTORY

On July 6, 2016, Gregg and Dylan Mullins shot and killed Michael Clayton. Gregg was 17 years old, Mullins was 18 years old, and Clayton was 19 years old. Gregg and Mullins entered the home of Clayton through a window while Clayton and his father were away. Gregg and Mullins broke into a gun safe in the home, removed weapons, and waited for Clayton to return. While they waited, Gregg and Mullins discussed killing Clayton and burning the house down after they killed him. When Clayton came home, both Gregg and Mullins shot him and he died. Gregg and Mullins then set fire to the home, fleeing the scene. They hid the weapons behind some bushes and went to a local library with the purpose of creating an alibi. After spending time at the library, Gregg and Mullins then stole a Kent parks and recreation department truck and retrieved some of the stashed firearms. The pair drove to Grays Harbor County, where they were arrested for possessing a stolen truck. While in custody, both Gregg and Mullins confessed to the murder.

Gregg was charged with first degree murder and first degree burglary, both while armed with a firearm, and first degree arson. Under RCW 13.04.030(1)(e)(v)(A) these charges were filed in adult court. Gregg pleaded guilty

as charged. In the plea agreement form, the portion regarding the firearm

registration requirement was crossed out. During the plea colloquy, the judge asked

Gregg whether he understood that the crossed out paragraphs did not apply to him,

and Gregg indicated that he understood. Despite this misinformation, the firearm

registration requirement was ordered as part of the sentence as required by RCW

9.41.330(3).

At a sentencing hearing, both the State and Gregg presented substantial

evidence regarding the crime and Gregg's culpability. Gregg sought an

exceptionally low sentence of 144 months and presented extensive mitigation

evidence regarding his youthfulness and the circumstances of his upbringing,

including expert opinions. The sentencing hearing involved about six days of

testimony. The court rejected Gregg's arguments in a detailed oral decision and

held that Gregg's youth in this case did not substantially diminish his culpability

and that no substantial and compelling reason existed to impose a sentence below

the standard range. Gregg was sentenced within the standard range to 37 years,

which included 10 years for firearm enhancements. Gregg appealed, challenging

the constitutionality of RCW 9.94A.535(1) and asserting that the misinformation

as to the firearm registration requirement established grounds for withdrawal of his

plea.

*State v. Gregg*, No. 97517-5

The Court of Appeals affirmed, holding that the statute was constitutional under both our state and the federal constitutions. *State v. Gregg*, 9 Wn. App. 2d 569, 574, 444 P.3d 1219 (2019). The Court of Appeals also held that the firearm registration requirement was a collateral consequence to the plea, concluding the affirmative misinformation as to the requirement did not render the plea involuntary. Gregg petitioned, and this court granted review.[1] *State v. Gregg*, 194 Wn.2d 1002, 451 P.3d 341 (2019).

ANALYSIS

I. Burden of Proving Mitigating Circumstances

We review questions of constitutional law de novo. *State v. Ramos*, 187 Wn.2d 420, 433, 387 P.3d 650 (2017). The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments." Article I, section 14 of our state constitution contains a similar provision that prohibits "cruel punishment." The statutory provision at issue here provides that "[t]he court may impose an exceptional sentence below the standard range if it finds that mitigating circumstances are established by a preponderance of the evidence." RCW 9.94A.535(1). Both the State and Gregg agree that a defendant bears the burden of proving that there are substantial and compelling reasons justifying an exceptional

---

[1] The Fred T. Korematsu Center for Law and Equality and the Juvenile Law Center both filed amicus briefs in support of Gregg.

*State v. Gregg*, No. 97517-5

sentence downward under this provision, which we have recognized in *Ramos*, 187 Wn.2d at 445. We also have held that youth is not a per se mitigating factor in the context of sentencing young adults. *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 330, 422 P.3d 444 (2018).

In *Ramos*, we considered whether the SRA provision at issue here placing the burden on a juvenile defendant in adult court to establish mitigation violated the Eighth Amendment—noting that the United States Supreme Court disavowed this argument in *Montgomery v. Louisiana*, 577 U.S. __, 136 S. Ct. 718, 735, 193 L. Ed. 2d. 599 (2016) (discussing *Miller v. Alabama,* 567 U.S. 460, 466, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). *Ramos*, 187 Wn.2d at 445. We reasoned:

> [Ramos] argues that the State must carry the burden of proving life without parole is appropriate in each individual case. We do not question the logical appeal of this reasoning. However, it attaches a procedural significance to *Miller*'s holding that the Court expressly disavowed. *Montgomery*, 136 S. Ct. at 735.
> . . . .
> *Miller* does not authorize this court to mandate sentencing procedures that conflict with the SRA unless it is shown that the SRA procedures so undermine *Miller*'s substantive holding that *they create an unacceptable risk of unconstitutional sentencing*. Ramos has not made this showing as to the SRA's allocation of the burden of proving that an exceptional sentence below the standard range is justified. We thus decline to hold that this allocation is unconstitutional as applied to juvenile homicide offenders.

*Ramos*, 187 Wn.2d at 445-46 (emphasis added). While Gregg does not assert that his sentence of 37 years is unconstitutional, he asserts that it is unconstitutional for

5

a standard range sentence to be presumptively valid for a juvenile sentenced in adult court and the burden should be on the State to prove that youth was not a mitigating circumstance in every case. *Ramos* expressly rejected this argument under an Eighth Amendment analysis, and Gregg's assertion that the State should bear the burden because children are less likely to be deserving of standard range sentences mirrors the argument rejected in *Ramos*. Gregg cites no intervening United States Supreme Court authority that would question our holding in *Ramos* that the allocation of the burden of proof under RCW 9.94A.535 is constitutional under the Eighth Amendment as applied to juveniles.

Although *Ramos* based its holding on the Eighth Amendment, we have not addressed whether the statutory burden of proof is constitutional under article I, section 14 of our state constitution. Gregg notes in his briefing that we have found our state constitution to be more protective in some circumstances. Gregg does not seek to have the sentence he received declared as categorically barred; instead, Gregg seeks a procedural change aiming to reduce the risk that a juvenile will be sentenced in adult court without appropriate consideration of the juvenile's youthfulness. However, as in *Ramos*, neither party here has offered an analysis of *how* our constitution should be interpreted differently than the federal constitution with respect to this unique claim using our analysis set out in *State v. Gunwall,* 106 Wn.2d 54, 720 P.2d 808 (1986). What Gregg seems to seek is a rewrite of SRA

procedures by this court specific to juvenile sentencing in adult court. Gregg cites no persuasive authority that would support this court rewriting the statutory provisions at issue here.

At most, Gregg quotes language and discussion from cases to support his constitutional arguments. Gregg quotes and cites *State v. Houston-Sconiers*, 188 Wn.2d 1, 9, 391 P.3d 409 (2017), to support his assertion that our constitution requires shifting the burden of proving mitigation. In *Houston-Sconiers*, we held that the Eighth Amendment provides sentencing courts with discretion to consider the mitigating qualities of youth and impose sentences below SRA guidelines for juvenile offenders in adult court. That case, however, was decided on Eighth Amendment grounds, not independently under article I, section 14. Further, Gregg seemingly concedes that *Houston-Sconiers* did not cite *Ramos* or mention the burden of proving mitigation at sentencing or the statutory provision at issue here. *Houston-Sconiers* cannot be read to have overturned *Ramos* or to have required invalidation of the statute.

Gregg also quotes *State v. Bassett* for the assertion that we have found article I, section 14 to be more protective of juveniles than the federal constitution. 192 Wn.2d 67, 82, 428 P.3d 343 (2018). In *Bassett*, we engaged in a *Gunwall* analysis to determine if and *how* article I, section 14 was more protective than the Eighth Amendment in the context of juvenile sentences of *life without the*

*possibility of parole*, concluding that it was more protective in this context and such sentences were categorically barred. We also recognized in *Bassett* that a categorical bar analysis offers the better framework compared to a proportionality analysis for analyzing cruel punishment claims made by juveniles under article I, section 14. Though a categorical bar analysis is generally better suited for analyzing cruel punishment claims made by juveniles, it offers a poor framework for analyzing the procedural burden-shifting claim made by Gregg.

Yet, even applying a categorical bar framework, Gregg's claim fails. Under that analysis we first consider "whether there is objective indicia of a national consensus against the sentencing practice at issue," then the court applies its own independent judgment to determine whether the practice is unconstitutional based on precedent from our cases and the court's own understanding and interpretation of article I, section 14. *Bassett*, 192 Wn.2d at 83.

Turning first to the national consensus prong, we find no support. The out-of-state cases Gregg cites to support his position are less helpful and distinguishable. These cases deal with the allocation of the burden of proof in the context of life without parole sentences and do not relate to the procedural requirements in the context of mitigation for juveniles not facing life without the possibility of parole. *See State v. Riley,* 315 Conn. 637, 110 A.3d 1205 (2015); *State v. Hart*, 404 S.W.3d 232, 241 (Mo. 2013); *Commonwealth v. Batts*, 640 Pa.

8

401, 163 A.3d 410 (2017); *Davis v. State*, 2018 WY 40, 415 P.3d 666, 681. Gregg

has cited no cases suggesting that a national consensus exists for a burden-shifting

presumption in favor of mitigation for all juveniles when sentenced in adult court.

As to the second prong, Gregg asserts that it is unconstitutional for a

juvenile to bear the burden of proving mitigation because children are different.

This claim appears to be based on the risk that a trial court will fail to appropriately

take youth into account when sentencing juveniles in adult court. Under Gregg's

argument, any categorical bar would be as to sentences where youth is not

*appropriately* taken into consideration.

As a whole, our cases recognize that children are different and procedural

differences exist for juveniles sentenced in adult court. We have held that trial

courts, when sentencing juveniles, have discretion to impose a sentence below the

standard range and may, where required, disregard mandatory enhancements when

supported by evidence presented at sentencing as to mitigating qualities of youth.

*Houston-Sconiers*, 188 Wn.2d at 21. We have gone further and held that *sentences*

*of life without the possibility of parole* are categorically barred for juveniles in

adult court. *Bassett*, 192 Wn.2d at 73. However, those principles do not support

invalidating the statutory *procedure* required to be applied nor the burden to

present evidence and testimony to support the relief sought.

*State v. Gregg*, No. 97517-5

Gregg offers no helpful analytical framework that would assist and guide sentencing courts to better identify what sentences would be appropriate in light of a juvenile's youthfulness. Instead, he asserts that trial courts should engage in a case-by-case analysis, much like they already do, but must start with a general presumption that a mitigated sentence is required unless the State proves otherwise. Without explicitly stating as much, Gregg asks this court to rewrite the SRA and declare standard range sentences to be exceptional sentences when applied to juveniles. To reach this result, we would not only need to declare the SRA structure partially unconstitutional but we would also need to overrule some of our cases. We disagree with the arguments made by Gregg, and he has not shown that such relief is appropriate in this case.

The State argues that this claim is more appropriately analyzed under a due process lens. However, Gregg acknowledges that he is not bringing a due process claim. While a due process analysis under procedural or substantive due process offers a framework for analyzing whether shifting the burden of proof is appropriate, Gregg does not assert a due process claim, thus we will not reach this issue.

## II. Misinformation

The second issue addresses whether Gregg's plea was involuntary because he was affirmatively misinformed about a consequence of his plea, a four-year

10

*State v. Gregg*, No. 97517-5

firearm registration requirement. We conclude that his plea was voluntary because, as the Court of Appeals correctly reasoned under our cases, this firearm registration requirement is not punishment, thus it does not enhance Gregg's sentence. Also, the circumstances do not rise to the level of a manifest injustice such to require allowing the withdrawal of a plea.

A plea must be knowing, voluntary, and intelligent to be valid. *State v. Mendoza*, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). Before a guilty plea is accepted, the defendant must be informed of all direct consequences of the plea. *Mendoza*, 157 Wn.2d at 588. Whether a consequence is direct turns on whether "'the result represents a definite, immediate and largely automatic effect *on the range of the defendant's punishment*'." *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996) (emphasis added) (internal quotation marks omitted) (quoting *State v. Barton*, 93 Wn.2d 301, 305, 609 P.2d 1353 (1980)). Collateral consequences are consequences that are not direct. Under CrR 4.2(f) "[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice."[2]

Affirmative misinformation as to a direct consequence renders a plea constitutionally invalid. *Mendoza*, 157 Wn.2d at 589. We have not, however,

---

[2] Oddly, Gregg does not seek to withdraw his plea but asks this court to remand with the direction that Gregg may withdraw his plea if he so chooses.

adopted a per se rule for affirmative misinformation as to collateral consequences. Gregg asserts that the firearm registration requirement is a direct consequence because it flows directly from the conviction. But the question as to whether a consequence is direct also turns on whether it enhances the sentence or punishment.

We determined that a similar, though more severe, sex offender registration requirement was a collateral consequence in *State v. Ward*, 123 Wn.2d 488, 493, 869 P.2d 1062 (1994). In *Ward*, we analyzed whether a sex offender registration requirement was an ex post facto law and whether the registration requirement was a direct or collateral consequence of the plea. In our ex post facto analysis, we reasoned that the registration requirement was not punitive because it did not impose any significant burden and the restrictions the legislature placed on disclosure of the information indicated the legislative intent was regulatory and not punitive. From this analysis we held that the registration requirement was not a direct consequence because it was not "punishment," thus "it does not enhance [the] sentence or punishment." *Ward*, 123 Wn.2d at 513.

The Court of Appeals here found the analysis in *Ward* to be instructive and concluded that the firearm registration requirement was a collateral consequence. We agree. Here, any burden imposed by the firearm registration requirement is not burdensome because RCW 9.41.333(2) lists six pieces of information a registrant

must supply. Further, the firearm registration information is not available to the public, which suggests a regulatory legislative intent. This regulatory intent and minor burden establishes that the registration requirement is not punitive, thus not a direct consequence.

Gregg also argues that affirmative misinformation concerning a collateral consequence should always render a plea involuntary. For support, Gregg cites two cases: *State v. Turley*, 149 Wn.2d 395, 399, 69 P.3d 338 (2003), and *State v. A.N.J.*, 168 Wn.2d 91, 116, 225 P.3d 956 (2010). These cases do not support his proposition.

*Turley* involved misinformation as to a direct consequence. There we addressed, for the purposes of withdrawal of a plea, whether a plea agreement is treated as indivisible or may be separated if misinformation is given only with respect to one charge and not other charges. We held that a mandatory community placement requirement was a direct consequence of a plea and misinformation rendered the plea invalid. *Turley*, 149 Wn.2d at 399. *Turley* did not discuss or involve collateral consequences and does not control the analysis here.

As to *A.N.J.*, we did not hold that affirmative misinformation as to a collateral consequence renders a plea involuntary per se. Instead, we reasoned that if the trial court found on remand that A.N.J. was misinformed that he could have his sex offender conviction *removed from his record*, such misinformation rose to

*State v. Gregg*, No. 97517-5

the level of a manifest injustice in the context of an ineffective assistance of counsel claim. *A.N.J.*, 168 Wn.2d at 116. This reasoning was not as to whether A.N.J. would have to register as a sex offender, as was the case in *Ward*, but was as to whether that conviction would follow A.N.J. forever. Here, the difference is that Gregg was not misinformed that he could have his felony conviction removed from his record, but he was given incorrect information about a firearm registration requirement. We agree with the holding of the Court of Appeals that the misinformation in Gregg's case does not rise to the level of a manifest injustice.

## CONCLUSION

We affirm the Court of Appeals. RCW 9.94A.535(1) placing the burden on juvenile defendants in adult court to prove mitigating circumstances is constitutional under article I, section 14 of our state constitution. Further, the affirmative misinformation as to a four-year firearm registration requirement does not render Gregg's plea involuntary because the registration requirement under RCW 9.41.330(3) is a collateral consequence and the circumstances in this case do not rise to the level of a manifest injustice.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Gregg*, No. 97517-5

WE CONCUR:

Stephens, C.J.

Madsen, J.

Owens, J.

Wiggins, JPT

15

*State v. Gregg*, No. 97517-5 (González, J., dissenting)

No. 97517-5

GONZÁLEZ, J. (dissenting) — I respectfully dissent. Science, Washington law, and the United States Constitution recognize that children are different from adults. *See* ch. 13.40 RCW; *State v. Houston-Sconiers*, 188 Wn.2d 1, 8, 391 P.3d 409 (2017) (quoting *Miller v. Alabama*, 567 U.S. 460, 480, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)). Because of those differences, children are presumed to have diminished culpability for their misdeeds and much greater capacity for growth and redemption. *Miller*, 567 U.S. at 479. Our juvenile justice system, however imperfectly, recognizes this and gives children far more opportunities for redemption and rehabilitation than our criminal justice system offers to adults. RCW 13.40.010, .080; *State v. B.O.J.*, 194 Wn.2d 314, 330-31, 449 P.3d 1006 (2019). An adjudication of guilt in juvenile court is not, as a matter of law, a conviction of a crime. RCW 13.04.240.

But children do commit violent acts, some of which, like the one committed here, are reprehensible. Over the years, our legislature has decided that some children charged with certain offenses should be tried in

1

*State v. Gregg*, No. 97517-5 (González, J., dissenting)

adult court and subject to adult sentences, regardless of the individual child's culpability and capacity. *See, e.g.*, LAWS OF 1997, ch. 338, § 7; RCW 13.04.030(1)(e)(v)(A)-(C).

Many of the statutes that effectively recategorized some children as adults were predicated on the discredited theory that some children were "juvenile superpredators." S.B. REP. ON ENGROSSED SECOND SUBSTITUTE S.B. 6160, 65th Leg., Reg. Sess. (Wash. 2018); *State v. Watkins*, 191 Wn.2d 530, 550, 423 P.3d 830 (2018) (Yu, J., dissenting). "Juvenile superpredators were characterized as ruthless sociopaths who lacked a moral conscience and were unconcerned about the consequences of their actions and undeterred by punishment." Br. of Jeffrey Fagan et al. as Amici Curiae in Supp. of Pet'rs at 8 (U.S. No. 10-9647 (2012)) (Fagan Brief). Based on that pernicious theory, states across the nation, including ours, removed many young people from the juvenile justice system and locked them away in adult prisons for very long sentences—or even the rest of their lives. *Id.* at 15-16 (citing PATRICIA TORBET ET AL., OFFICE OF JUV. JUST. & DELINQ. PREVENTION, U.S. DEP'T OF JUST., STATE RESPONSES TO SERIOUS AND VIOLENT JUVENILE CRIME, xv (July 1996), www.ncjrs.gov/pdffiles/statresp.pdf [https://perma.cc/K3U5-FL4T]), 20.

The theory that our nation was beset by "juvenile superpredators" was at best wrong and at worst deeply racist. Jane Rutherford, *Juvenile Justice Caught between the Exorcist and A Clockwork Orange*, 51 DEPAUL L. REV. 715, 721-22 (2002). To his credit, Professor Dilulio, the scholar who had originally popularized the term, has disavowed the theory before the United

*State v. Gregg*, No. 97517-5 (González, J., dissenting)

States Supreme Court. *State v. Null*, 836 N.W.2d 41, 56 (Iowa 2013) (citing Fagan Brief at 14-19).

We now know that children are different, that the human brain continues to mature into the mid-20s, and that many teenagers simply "lack the ability to properly assess risks and engage in adult-style self-control" that would make an adult sanction appropriate. *Null*, 836 N.W.2d at 55 (citing ELIZABETH S. SCOTT & LAURENCE STEINBERG, RETHINKING JUVENILE JUSTICE 34 (2008)). At least some of these facts have constitutional significance under the Eighth Amendment, and some legislation predicated on that old discredited criminological theory are being significantly revised. *See Miller*, 567 U.S. at 476-77; LAWS OF 2018, ch. 162.

Now, as a matter of constitutional law, trial judges *must* meaningfully consider the fact that children are different when determining the just sentence for crimes they committed as children. *In re Pers. Restraint of Domingo-Cornelio*, No. 97205-2, slip op. at 1 (Wash. Sept. 17, 2020), https://www.courts.wa.gov/opinions/; *In re Pers. Restraint of Ali*, No. 95578-6, slip op. at 1 (Wash. Sept. 17, 2020), https://www.courts.wa.gov/opinions/; *Houston-Sconiers*, 188 Wn.2d at 21; *Miller*, 567 U.S. at 480. Now, only "the rarest of children, those whose crimes reflect 'irreparable corruption,'" may be sentenced to die in prison. *Montgomery v. Louisiana*, 577 U.S __, 136 S. Ct. 718, 726, 193 L. Ed. 2d 599 (2016) (internal quotation marks omitted) (quoting *Miller*, 567 U.S. at 479-80). Such sentences must be carefully considered and rarely imposed. *Id.* (citing *Miller*, 567 U.S. at 479-80). Similarly, judges must meaningfully

3

*State v. Gregg*, No. 97517-5 (González, J., dissenting)

consider a child's culpability and capacity for change before imposing a standard range sentence designed for adults. *Houston-Sconiers*, 188 Wn.2d at 9; *State v. Ramos*, 187 Wn.2d 420, 428, 387 P.3d 650 (2017). We find these requirements to be a significant and material change in the law requiring retroactive application. *Domingo-Cornelio*, slip op. at 1-2; *Ali*, slip op. at 2. While *Houston-Sconiers* was discussed at sentencing, I have significant doubt whether the trial court fully appreciated its obligation to consider youth as a mitigator. 6 Report of Proceedings (Dec. 14, 2017) at 677-88. Instead, the court seemed to discount the possibility that youth played a role and declined to depart from an adult standard range. *Id.* at 688.

The Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, was written long before Professor Dilulio repudiated the "juvenile superpredator" theory and *Miller* held that children could not be constitutionally subject to mandatory life sentences. LAWS OF 1981, ch. 137; *Miller*, 567 U.S. at 479. The SRA contemplates that the defendant, in every case, has the burden of showing that a downward departure from the sentencing guidelines is appropriate. RCW 9.94A.535(1). But given what we now know, only in rare cases is it appropriate to sentence juveniles as if they were adults. This must be included in how we approach and structure sentencing for children.

I am deeply troubled by amicus's conclusion that the vast majority of children who have been transferred to adult court since *Houston-Sconiers* are receiving standard sentences designed for adults. Br. of Fred T. Korematsu Center for Law and Equality as Amicus Curiae in Supp. of Pet'r at 8-9 (citing WASH. STATE CASELOAD FORECAST COUNCIL, STATISTICAL

4

*State v. Gregg*, No. 97517-5 (González, J., dissenting)

SUMMARY OF ADULT FELONY SENTENCING FISCAL YEAR 2018, at 71 (2018),
www.cfc.wa.gov/PublicationSentencing/StatisticalSummary/Adult_Stat
_Sum_FY_2018.pdf [https://perma.cc/24ME-BNR5], and WASH. STATE
CASELOAD FORECAST COUNCIL, STATISTICAL SUMMARY OF ADULT FELONY
SENTENCING YEAR 2019, at 72 (2019),
www.cfc.wa.gov/PublicationSentencing/StatisticalSummary/Adult_Stat
_Sum_FY_2019.pdf [https://perma.cc/6S4Z-VCH9]). Our juvenile justice
system is focused on accountability and rehabilitation, not retribution. TODD
DOWELL, THE JUVENILE OFFENDER SYSTEM IN WASHINGTON STATE 2 (2019)
(citing RCW 13.40.010(2)).[1] It cannot be the case that the diminished
culpability of a child does not warrant a routine downward departure from
an adult standard range sentence. *See generally Roper v. Simmons*, 543 U.S.
551, 571, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005). But data collected by the
forecast council suggests the opposite is happening.

The promise of the Eighth Amendment, *Miller*, and *Houston-Sconiers*
must not be merely rhetorical. We are better than that. Since, as a matter of
fact and law, children are different, trial judges must start from the
presumption that a downward departure from the standard range is
appropriate. *Cf. Ramos*, 187 Wn.2d at 436; *Montgomery*, 136 S. Ct. at 726
(citing *Miller*, 567 U.S. at 479-80). That presumption should be followed
unless the judge is persuaded that the case before them is one of the rare
cases where a standard range adult sentence is appropriate. If it is one of

---

[1] http://waprosecutors.org/wp-content/uploads/2019/09/Understanding-the-Juvenile-System-in
-WA-2019-Edition-rev.-08-26-2019.pdf [https://perma.cc/Z2HT-H6B9]

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Gregg*, No. 97517-5 (González, J., dissenting)

those rare cases where a standard range adult sentence is appropriate, that should be explained on the record.

I respectfully dissent.

González, J.

Gordon McCloud, J.

Montoya-Lewis, J

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Gregg,* No. 97517-5
(Yu, J., concurring in dissent)

No. 97517-5

YU, J. (concurring in dissent) — I agree with the majority that *State v.*

*Ramos*, 187 Wn.2d 420, 387 P.3d 650 (2017), based its holding on the Eighth

Amendment to the United States Constitution and that we have not addressed

whether the statutory burden of proof provided by the Sentencing Reform Act of

1981 (SRA), ch. 9.94A RCW, is constitutional as applied to juveniles in

accordance with article I, section 14 of the Washington Constitution.

I also do not disagree with the majority's summary of our cases on juvenile

culpability.  However, I join the dissent today because we have enough guidance

from our cases and scientific data to reach the question before us without having to

strike down the SRA, a sentencing scheme designed for adults.  The lack of robust

briefing on the state constitutional question is disappointing, but it does not

preclude us from holding that youth is a mitigating factor when juveniles are

*State v. Gregg*, No. 97517-5
(Yu, J., concurring in dissent)

sentenced in adult court.  Indeed, a *Gunwall*[1] analysis is not always required for us to reach a state constitutional question, so long as there is a "principled basis for departing from federal law."  *Chong Yim v. City of Seattle*, 194 Wn.2d 682, 692, 451 P.3d 694 (2019).

The question before us is whether there is a procedural *presumption* that should be afforded to youth declined from juvenile court.  The fact of youthfulness does not fade away because the prosecutor has opted to try an individual in adult court.  As noted by Justice González, *Miller*[2] recognizes that children are constitutionally different from adults for the purposes of sentencing juvenile offenders in adult court.  *See Ramos*, 187 Wn.2d at 428.  I therefore share the conclusion that children in adult court should not have to *prove* their youthful characteristics in order to receive a sentence below the standard range, and I respectfully concur in the dissent.

_____

---

[1] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).
[2] *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).