# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55624-3-II |
| Respondent, | |
| v. | |
| BRYAN CHRISTOPHER MATSEN, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Bryan C. Matsen appeals his convictions and sentence. Matsen pleaded guilty to two counts of aggravated murder in the first degree. Matsen contends that he is entitled to withdraw his guilty plea. Specifically, he argues that his plea was involuntary because he was misinformed about the maximum statutory penalty for aggravated murder in the first degree. In a statement of additional grounds (SAG), Matsen also argues that his plea was involuntary because he was misinformed about the imposition of mandatory community custody, which he contends is a direct consequence of his plea under the facts of this case. Matsen further argues that his plea was involuntary because he was provided ineffective assistance of counsel.

We hold that Matsen fails to show that his guilty plea was involuntary. First, Matsen was properly informed about the maximum statutory penalty that applied to him. Second, community custody was not a direct consequence of Matsen's guilty plea under the facts presented. He was sentenced to life imprisonment without the possibility of parole and the imposition of community custody would not enhance his sentence or punishment. Third, Matsen does not establish ineffective assistance of counsel requiring a withdrawal of his guilty plea because he fails to allege

any prejudice from counsel's allegedly deficient performance at sentencing. Accordingly, we affirm Matsen's convictions and sentence for two counts of aggravated murder in the first degree.

FACTS

On November 30, 2005, the State charged Matsen with two counts of aggravated murder in the first degree. In the charging document, the State advised that the maximum penalty for each count was "[l]ife imprisonment without the possibility of parole or release, or death if the [State] files written notice of a special sentencing proceeding to determine whether the death penalty should be imposed and if the jury finds that there are not sufficient mitigating circumstances to merit leniency." Clerk's Papers (CP) at 8, 9.

The State considered pursuing capital punishment. In fact, Matsen's appointed counsel moved to withdraw "due to the possibility of the death penalty or mitigating circumstances," which the trial court granted. CP at 67. Additionally, the record demonstrates that the parties agreed to extend the deadline for the State to file a "Special Sentencing Proceeding Notice" so that Matsen could compile a mitigation package. CP at 69. A hearing for the special sentencing notice was set for November 1, 2006.

On November 1, Matsen entered guilty pleas to both counts of aggravated murder in the first degree. In exchange for Matsen's guilty pleas, the State agreed to recommend a sentence of life without the possibility of parole under the plea agreement. In both the statement of defendant on plea of guilty and the plea agreement, Matsen was advised that the standard range sentence and maximum statutory penalty for both counts was life imprisonment without the possibility of parole.

Matsen's statement of defendant on plea of guilty also contained a section concerning community custody. In relevant part, the statement contained boilerplate language providing that, "If the crime I have been convicted of falls into one of the offense types listed in the following

2

chart, the court will sentence me to community custody for the community custody range established for that offense type unless the judge finds substantial and compelling reasons not to do so." CP at 15. Below the boilerplate language, a chart provided that "Serious Violent Offenses" would carry a community custody range of "24 to 48 months or up to the period of earned release, whichever is longer." CP at 15. However, Matsen's plea agreement did not mention the imposition of community custody.

Matsen affirmed that he had reviewed the statement of defendant on plea of guilty with his attorney. Matsen also affirmed that he reviewed the plea agreement and understood its terms. The trial court found that Matsen made his plea of guilty "knowingly, intelligently and voluntarily . . . understand[ing] the charges and consequences of the plea." CP at 19. The court also approved the plea agreement finding that Matsen "knowingly, voluntarily and intelligently entered into this plea agreement, and [he] understands the consequences of the agreements, recommendations and waivers therein." CP at 25. Accordingly, the court accepted Matsen's plea of guilty to both counts of aggravated murder in the first degree.

On November 15, the court sentenced Matsen to life imprisonment without the possibility of parole. At the sentencing hearing, the State requested the court to impose community custody conditions despite the fact that it was not mentioned in the plea agreement:

> There is one minor housekeeping matter, and that has to do with community custody. We didn't include it in the plea agreement. It seems somewhat superfluous in a case in which the defendant is getting life without the possibility of parole; however, I fear if we don't include it in the judgment and sentence, Department of Corrections will send it back. It is a serious violent offense, and while it does seem somewhat superfluous, I think we should address that so we don't have to readdress it later.

Report of Proceedings (Nov. 15, 2006) at 17. The court agreed and imposed community custody for both counts for a period of 24 to 48 months. Neither defense counsel nor Matsen objected to the inclusion of community custody in the judgment and sentence.

On November 16, 2007, Matsen filed a motion to withdraw his guilty plea.[1] Matsen's motion was transferred to this court as a personal restraint petition (PRP). We denied Matsen's PRP. *See* Order Dismissing Petition, *In re Pers. Restraint of Matsen*, No. 37224-0-II (Sept. 23, 2008).

On February 19, 2021, Matsen filed this notice of appeal. Matsen filed a motion under RAP 18.8(b) seeking our permission to file his untimely notice of appeal. A commissioner of this court granted the motion, accepting Matsen's appeal because "[t]he State has not met its burden of showing that Matsen voluntarily, knowingly, and intelligently [] waived his constitutional right to appeal." *See* Comm'r's Ruling (May 25, 2021). The State did not seek to modify the commissioner's ruling. Matsen appeals.

## ANALYSIS

### I.    MAXIMUM STATUTORY PENALTY

Matsen argues that he is entitled to withdraw his guilty plea because he was misinformed about the maximum statutory penalty for aggravated murder in the first degree. More specifically, Matsen argues that the possibility of the death penalty influenced his decision to plead guilty, but because the Supreme Court in *State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018), held that such a sentence violated article 1, § 14 of the Washington Constitution, the change in the law renders his plea involuntary. We disagree.

---

[1] Matsen alleged that he was not mentally competent to make a plea, that he was coerced by defense counsel to sign the statement of defendant on plea of guilty, and that he was provided ineffective assistance based on counsel's failure to seek a mental health evaluation.

A. Legal Principles

"We review whether a defendant's guilty plea was intelligent and voluntary de novo because it is a constitutional issue." *State v. Harris*, 4 Wn. App. 2d 506, 512, 422 P.3d 482 (2018).

"Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." *State v. Weyrich*, 163 Wn.2d 554, 556, 182 P.3d 965 (2008). This standard is reflected in CrR 4.2(d), which states in relevant part, "The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea."

"'[A] guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence of the plea.'" *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018) (quoting *State v. Mendoza*, 157 Wn.2d 582, 591, 141 P.3d 49 (2006)). Both the statutory maximum sentence determined by the legislature and the applicable standard sentence range are direct consequences of a guilty plea about which a defendant must be informed in order to satisfy due process requirements. *State v. Kennar*, 135 Wn. App. 68, 74-75, 143 P.3d 326 (2006); *see Weyrich*, 163 Wn.2d at 557. When a guilty plea is based on misinformation regarding a direct consequence of the plea, the defendant may move to withdraw the plea based on involuntariness. *Weyrich*, 163 Wn.2d at 557; *Mendoza*, 157 Wn.2d at 592. The defendant bears the burden of establishing that their guilty plea was invalid. *State v. Easterlin*, 159 Wn.2d 203, 209, 149 P.3d 366 (2006).

Relevant here, the State charged Matsen with two counts of aggravated murder in the first degree. RCW 10.95.030(1)[2] states in relevant part that, "Except as provided in subsections (2) and (3) of this section, any person convicted of the crime of aggravated first degree murder shall be sentenced to life imprisonment without possibility of release or parole." RCW 10.95.030(2) provides that, "[i]f, pursuant to a special sentencing proceeding held under RCW 10.95.050, the trier of fact finds that there are not sufficient mitigating circumstances to merit leniency, the sentence shall be death." And RCW 10.95.050(1) provides that, "[i]f a defendant is adjudicated guilty of aggravated first degree murder . . . a special sentencing proceeding shall be held *if a notice of special sentencing proceeding was filed and served as provided by RCW 10.95.040*." (Emphasis added.)

B.      Matsen was Properly Informed about the Maximum Statutory Sentence

Here, Matsen must make a showing on this record that the *Gregory* decision renders his plea involuntary. *Easterlin*, 159 Wn.2d at 209. We conclude that Matsen cannot meet his burden. Matsen was informed that the standard range sentence and maximum statutory penalty for both counts of aggravated murder in the first degree was life imprisonment without the possibility of parole. Matsen was properly informed about the applicable standard sentencing range and the maximum statutory penalty that applied to him because the State never filed a special sentencing proceeding notice seeking to impose the death penalty.

---

[2] The sentencing statutes that applied to Matsen at the time of his convictions have been amended. Because the language that applies here remains the same, this opinion utilizes the current version of the sentencing statutes.

Matsen's reliance on *Gregory* is inapposite because that case did not change the sentencing laws that actually applied to him. *See In re Pers. Restraint of Zamora*, 14 Wn. App. 2d 858, 867, 474 P.3d 1072 (2020).[3] Had the *Gregory* decision been issued before Matsen pleaded guilty or was sentenced, he still faced two counts of aggravated murder in the first degree and sentences of life without the possibility of parole. *See id.* Because Matsen was properly informed about the maximum sentence that applied to him, *Gregory* does not render Matsen's plea involuntary.

Accordingly, we hold that Matsen fails to demonstrate on this record that his plea was involuntary based on being misinformed about the maximum statutory penalty that applied to him. He is not entitled to withdraw his guilty plea.

II.     MANDATORY COMMUNITY CUSTODY

In his SAG, Matsen appears to argue that he is entitled to withdraw his guilty plea because he was misinformed about a direct consequence of his guilty plea—specifically, that he would receive community custody as part of his sentence. We disagree.

A.      Legal Principles

As discussed above, if a guilty plea is based on misinformation, then the defendant may move to withdraw the plea based on involuntariness. *Mendoza*, 157 Wn.2d at 592. However, "[a] defendant need not be informed of all possible consequences of a plea but rather only direct consequences." *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996). Washington courts distinguish direct from collateral consequences by asking whether "'the result represents a definite, immediate and largely automatic effect *on the range of the defendant's punishment*.'" *State v.*

---

[3] In *Zamora*, Division One of this court held that *Gregory* was not material to Zamora's sentence under RCW 10.73.100(6). 14 Wn. App. 2d at 866-67. Although *Zamora* addressed whether *Gregory* was a significant, material change in the law for purposes of determining the timeliness of Zamora's PRP, it would be incongruent to conclude that while *Gregory* was immaterial to Zamora's plea, it rendered Matsen's plea here involuntary.

*Gregg*, 196 Wn.2d 473, 483, 474 P.3d 539 (2020) (quoting *Ross*, 129 Wn.2d at 284). "[T]he question as to whether a consequence is direct also turns on whether it enhances the sentence or punishment." *Gregg*, 196 Wn.2d at 484.

Generally, "[m]andatory community placement is a direct consequence of a guilty plea because it 'produces a definite, immediate and automatic effect on a defendant's range of punishment.'" *State v. Turley*, 149 Wn.2d 395, 399, 69 P.3d 338 (2003) (quoting *Ross*, 129 Wn.2d at 284). For example, in *Ross*, the Supreme Court held that a defendant may withdraw his guilty plea because he was not informed about mandatory community placement—a direct consequence of his guilty plea. 129 Wn.2d at 287-88. There, the court found significant that "mandatory community placement enhanced [Ross's] minimum sentence and altered the standard of punishment applicable." *Id*.

As discussed above, the State charged Matsen with two counts of aggravated murder in the first degree. RCW 10.95.030(1) provides that "any person convicted of the crime of aggravated first degree murder *shall be sentenced to life imprisonment without possibility of release or parole*." (Emphasis added.)

B.      Mandatory Community Custody is Not a Direct Consequence Under These Facts

Here, the court sentenced Matsen to life imprisonment without the possibility of parole—the mandatory sentence for his crimes. RCW 10.95.030(1). This sentence, agreed to by Matsen, simply leaves no room for community custody as a possible sentence. Because community custody would not enhance his sentence or punishment, community custody placement in this case was not a direct consequence of Matsen's plea. *See Gregg*, 196 Wn.2d at 483-84. And because community custody was not a direct consequence of his guilty plea, Matsen's argument is without merit.

Accordingly, we hold that Matsen fails to demonstrate on this record that his plea was involuntary. He is not entitled to withdraw his guilty plea.

III.    INEFFECTIVE ASSISTANCE OF COUNSEL

In his SAG, Matsen also appears to argue that he entitled to withdraw his guilty plea because his defense counsel provided ineffective assistance, which renders his plea involuntary and unintelligent. Specifically, Matsen contends that defense counsel rendered ineffective assistance because counsel failed to advise him about the mandatory community custody that applied to him and failed to ensure that he wished to proceed with the plea once the State requested the imposition of community custody at sentencing. We disagree.

A.    Legal Principles

"The Sixth Amendment right to effective assistance of counsel encompasses the plea process." *State v. Sandoval*, 171 Wn.2d 163, 169, 249 P.3d 1015 (2011). To establish that a plea was involuntary or unintelligent based on ineffective assistance of counsel, the defendant must satisfy the familiar two-part test from *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Sandoval*, 171 Wn.2d at 169.

To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). If the defendant fails to satisfy either prong, then the defendant's ineffective assistance of counsel claim fails. *Id*. at 33.

B.    Matsen Fails to Demonstrate Ineffective Assistance of Counsel

Here, Matsen does not establish ineffective assistance of counsel requiring a withdrawal of his guilty plea. Even if defense counsel rendered objectively unreasonable and deficient assistance, Matsen does not allege that he was prejudiced by the alleged deficient assistance.

9

Therefore, we hold that Matsen fails to establish that his plea was involuntary or unintelligent based on ineffective assistance of counsel. Accordingly, Matsen's argument fails.

We affirm Matsen's conviction and sentence for two counts of aggravated murder in the first degree.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Glasgow, C.J.

Price, J.