IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 85795-9-I |
| Respondent, | |
| v. | DIVISION ONE |
| VINCENT EDWARD HUFF, Jr., | UNPUBLISHED OPINION |
| Appellant. | |

COBURN, J. — Vincent Huff, Jr. challenges his 2018 plea agreement because he was not informed that the trial court had the discretion to impose a term of community custody for the offense of assault in the second degree. The record demonstrates that Huff was informed that the court could order community custody and he was not affirmatively misled about a consequence of his plea. As there is no grounds to withdraw his plea, we affirm the conviction but remand to strike the legal financial obligations from his judgment and sentence.

FACTS

In May 2018, the State charged Huff with one count of rape of a child in the first degree and one count of child molestation in the first degree. The parties "carefully negotiated" a plea agreement in which Huff agreed to plead guilty pursuant to North

Carolina v. Alford[1] to one count of assault in the second degree and pursuant to In re Barr[2] and State v. Zhao[3] to one count of assault in the third degree. In exchange, the State agreed to recommend a sentence of seven months of incarceration on each count to be served concurrently.

At the plea hearing, Huff confirmed that he had read the plea agreement on his own and with his attorney. During the colloquy, Huff expressed questions and confusion about several issues which were addressed in private conversations with his counsel. Huff stated that he understood the charges, the associated standard ranges and maximum sentences, and that the judge was not required to accept the recommended sentence. The trial court found that, based on Huff's written statement and his answers during the colloquy, the plea was knowingly, intelligently, and voluntarily made, Huff understood the consequences of the plea, and there was a factual basis for the plea.

At the sentencing hearing, the trial court imposed the agreed recommendation of seven months of confinement which amounted to his time already served in the King County jail. In addition, the trial court noted that assault in the second degree "is a violent crime . . . and does make Mr. Huff eligible for community custody for a period of up to 12 months," and exercised its discretion to impose this term of community custody. The Department of Corrections subsequently determined that Huff was ineligible for supervision and he was released from community custody in November 2018.

Huff filed a notice of appeal in August 2023. The appeal was untimely, but a

---

[1] North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).
[2] In re Pers. Restraint of Barr, 102 Wn.2d 265, 684 P.2d 712 (1984).
[3] State v. Zhao, 157 Wn.2d 188, 137 P.3d 835 (2006).

commissioner of this court granted his motion to enlarge time to file the appeal.

## DISCUSSION

Huff challenges his plea agreement, a community custody condition, and legal financial obligations imposed at the time of his sentencing.

## Withdrawal of Plea

Huff asserts that his guilty plea was invalid because he was affirmatively misled about the community custody consequences of his plea. We disagree.

"Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." State v. Mendoza, 157 Wn.2d 582, 587, 141 P.3d 49 (2006). The defendant must be informed of all direct consequences of the plea. State v. Gregg, 196 Wn.2d 473, 483, 474 P.3d 539 (2020). "[A] guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence on the plea."[4] Mendoza, 157 Wn.2d at 591. "Absent a showing that the defendant was correctly informed of all of the direct consequences of his guilty plea, the defendant may move to withdraw the plea." Id.

Here, Huff contends that he was affirmatively misled about the applicability of community custody because the paragraphs pertaining to community custody were crossed out in his guilty plea statement and he acknowledged that the paragraphs did not apply to him. Huff is correct that section 6(f) concerning community custody was struck from his guilt plea statement. The provision states, "[i]n addition to confinement, if

---

[4] Both parties cite to State v. Ross, 129 Wn.2d 279, 280, 916 P.2d 405 (1996), which held that "mandatory community placement constitutes a direct consequence of a guilty plea and failure to so inform a defendant renders that plea invalid." However, in this case, the term of community custody was discretionary under RCW 9.94A.702(c) rather than mandatory. Neither party discusses whether community custody imposed pursuant to the trial court's discretion is a direct or collateral consequence of a plea and we make no determination as to whether Ross applies equally to discretionary terms of community custody. Rather, we resolve the merits of Huff's claim on the factual argument provided by the parties.

the total period of confinement ordered is more than 12 months, the judge will sentence me to the following period of community custody, unless the judge finds substantial and compelling reasons to do otherwise." However, any standard range sentence imposed by the trial court would not have met the parameters for community custody outlined in 6(f). Huff's standard range sentence was six to 12 months of incarceration and the agreed recommended sentence was seven months. During the plea colloquy, Huff acknowledged that section (f) did not apply to him. Thus, the record does not support Huff's claim that the deletion of section 6(f) affirmatively misled him as to a direct consequence of the plea agreement.

The statement on plea of guilty discloses that the trial court may impose community custody. The provision 6(e), immediately above the struck language, outlines aspects of sentencing other than confinement, including "[t]he judge may also order that I pay a fine, court costs, attorney fees, and other costs and fees, and place other restrictions and requirements upon me. Furthermore, the judge may place me on community custody." While Huff did not explicitly acknowledge that the judge could order community custody, he confirmed his understanding that the court could impose fines, costs and fees as detailed in the same provision of his guilty plea statement.

The possibility that the judge could place him on community custody was included in the guilty plea statement that Huff acknowledged having reviewed by himself and with his attorney. Moreover, when the court imposed community custody, Huff did not express any confusion or objection. The record supports that Huff was informed that the court could impose community custody as a consequence of his plea. As such, Huff has not established a basis to withdraw his guilty plea.

<u>Community Custody Condition</u>

Huff challenges one of the conditions imposed during his short time in community custody. He contends that Condition 9, which ordered him to "[r]emain within geographic boundaries, as set forth in writing by the Department of Corrections Officer or as set forth with SODA order," is unconstitutionally vague.

Huff is not currently subject to this community custody condition and has not been subject to it since he was found ineligible for supervision and released in November 2018. As a result, this court cannot provide effective relief and Huff's challenge to the condition is moot. <u>See</u> <u>State v. Hunley</u>, 175 Wn.2d 901, 907, 287 P.3d 584 (2012). We may retain and decide an appeal that is technically moot if it involves matters of continuing and substantial public interest and is likely to evade review. <u>In re Pers. Restraint of Erickson</u>, 146 Wn. App. 576, 582, 191 P.3d 917 (2008). The issue will not evade review, as this court has previously considered the constitutionality of the same geographic restriction and will review the issue in other pending cases.[5] Therefore, we decline to consider the merits of this moot claim.

<u>Legal Financial Obligations (LFOs)</u>

During Huff's sentencing in 2018, the trial court noted that he was indigent but imposed the mandatory Victim Penalty Assessment (VPA) of $500 pursuant to former RCW 7.68.035(1) (2022) and the $100 DNA collection fee pursuant to former RCW 43.43.7541 (2022). Since that time, the Washington legislature has amended the statutes to prohibit the imposition of the VPA when the defendant is indigent and

---

[5] <u>State v. Weeden</u>, No. 85648-1, slip op. at 3-5 (Wash. Ct. App. Jan. 21, 2025) (unpublished), https://www.courts.wa.gov/opinions/pdf/856481.pdf. <u>State v. Johnson</u>, No. 86004-6-I (hearing set for April 16, 2025); <u>State v. Brown</u>, No. 86224-3-I (notice of appeal filed Jan. 12, 2024).

eliminate the DNA collection fee. RCW 7.68.035; RCW 43.43.7541; State v. Ellis, 27 Wn. App. 2d 1, 16-17, 530 P.3d 1048 (2023). Huff requests that we remand to strike the VPA and DNA fee from his judgment and sentence. The State does not object to this request. Therefore, we remand to the trial court solely for the ministerial purpose of striking the VPA and DNA fee.

### Statement of Additional Grounds

Finally, Huff submitted a statement of additional grounds for review attacking his plea. He states that he was released pursuant to his Alford plea but was still convicted of the assault charges which appear on his record. He also notes that the plea "makes it seem like I got accused and blamed everything on someone else which I don't see how that's possible. I did not say that at all." Huff appears to suggest on appeal that he did not understand the plea agreement.

The record demonstrates that the plea hearing included a comprehensive colloquy in which Huff expressed that he understood the charges against him. Huff paused the proceedings multiple times in order to speak with his attorney and, each time, represented that his question had been answered. The State read aloud the Alford plea statement where Huff asserted that he was not guilty of the crime charged but "reviewed the case with my attorney and I believe that there is a substantial likelihood that I could be found guilty. I wish to plead guilty to take advantage of the State's offer." The State also read the Zhao plea statement which included the statement, "I believe that if this matter proceeded to trial on the original charge, there's a substantial likelihood I would be convicted of the original charge," and a wish to plead guilty to the amended charges for the benefit of the plea offer. Huff acknowledged that he agreed to

6

the statements. The court confirmed that Huff understood the two types of pleas he was entering and had no remaining questions about the procedures. The court found the plea to be entered knowingly, intelligently, and voluntarily made. The record before us supports that conclusion and there is no grounds to withdraw the plea.

Affirmed but remanded to strike LFOs from the judgment and sentence.

_Coburn, J._

WE CONCUR:

_Chung, J._                    _Mann, J._